JONATHAN G. VALLETTE

*v.*

JOHN H. TEDENS ,*et al.*

*Filed at Ottawa November 11, 1887.*

1.  TRUST—*when a trust will arise—abuse of trust and confidence by an agent.*   Where a confidential agent is employed to examine title to land, with a view of correcting defects therein, and to assist his employer in acquiring title to adjacent land, and, as such agent, is intrusted with his principal's abstracts of title, and receives information to aid him in procuring the title, if he, while so acting, acquires the title in his own name, in violation of his duty, he will, in equity, be held to hold such title in trust for his principal.

2.  Persons engaged in the business of making abstracts of title, occupy a relation of confidence toward those employing them, second, only, in the sacredness of its nature, to that between an attorney and his client, and should be held to a strict responsibility in the exercise of the trust and confidence reposed in them.   Any abuse of such trust and confidence should receive an emphatic rebuke.

3.  STATUTE OF FRAUDS—*abuse of trust and confidence by an agent.* If an agent employed by another to look up the title to a tract of land, and purchase the same, conceals information acquired by him, and takes the title in his own name, denying his agency and employment, a court of equity will compel him to convey the land to his principal, although he may plead the Statute of Frauds in defence.

APPEAL from the Circuit Court of Du Page county; the Hon. C. W. UPTON, Judge, presiding.

Mr. HENRY DECKER, for the appellant:

Where a man merely employs another, by parol, as an agent to buy an estate, and the agent buys it, using his own money, and denies the trust, the agent can not be compelled to convey unless there is an agreement in writing to that effect.   In such a case there is no resulting trust, and no such fraud, accompanied with injury, as would bring the case within the exceptions of the statute.   2 Story's Eq. Jur. sec. 1201; Perry on Trusts, sec. 135 ; 2 Sugden on Vendors, 911 ; *Bartell* v. *Pickergill,* 21

East, 577; *Hill* v. *Smith,* 4 Johns. 240; *Davis* v. *Wetherell,* 11 Allen, 19; *Parsons* v. *Phelan,* 134 Mass. 109; *Boyd* v. *McLean,* 1 Johns. Ch. 582; *Stein* v. *Stein,* 5 id. 19; *Smith* v. *Burnham,* 3 Sumner, 464; *Pastel* v. *Hutchinson,* 1 Dickens, 44; *Dorsey* v. *Clarke,* 4 Harr. & Johns. 550; *Jackman* v. *Ruyland,* 4 W. & S. 149; *Pinnock* v. *Clough,* 16 Vt. 500; *Lemos* v. *Bailey,* 2 Vern. 627; *Atkins* v. *Rowe,* Mosley, 39, cited and commented on in 3 Sugden on Vendors, (6th Am. ed.) 171; *Remington* v. *Campbell,* 60 Ill. 516; *Sheldon* v. *Harding,* 44 id. 68; *Holmes* v. *Holmes,* id. 168; *Bruce* v. *Roney,* 18 id. 67; *Loomis* v. *Loomis,* 28 id. 454; *Williams* v. *Brown,* 14 id. 200.

A resulting trust, within the exception of the statute, can only arise when the purchase money, or some aliquot part thereof, has been paid by the party seeking to enforce it. *Pinnock* v. *Clough,* 16 Vt. 503; *Perry* v. *McHenry,* 13 Ill. 227; *Lloyd* v. *Spillett,* 2 Atk. 150; *Sayre* v. *Townsend,* 15 Wend. 650; *Heacock* v. *Coalsworth,* Clarke's Ch. 83; *Botsford* v. *Burr,* 2 Johns. Ch. 405; *Fickett* v. *Durham,* 109 Mass. 419; *Barnard* v. *Jewett,* 97 id. 88; *Kendall* v. *Mann,* 11 Allen, 17.

Where there are no resulting trusts, the exceptions are confined to cases of fraud in the execution of the trust, where confidential relations exist, or of fraud accompanied with injury, or where fraudulent advantage has been taken by an agent through his knowledge of the affairs of his principal, and to the substantial injury of the principal. *Clarkson* v. *Richardson,* 69 Ill. 137; *Cramer* v. *House,* 93 id. 503; *Perry* v. *McHenry,* 13 id. 227; *Sweet* v. *Jacocks,* 6 Paige, 355; *Lees* v. *Nuttall,* 1 R. & M. 53; *Sheriff* v. *Neal,* 6 Watts, 534; *Watson* v. *Erb,* 33 Ohio St. 35; *Burden* v. *Sheridan,* 36 Iowa, 125; *Arnold* v. *Cord,* 16 Ind. 177; *Lillard* v. *Casey,* 2 Bibb, 459; *Combs* v. *Little,* 3 Green Ch. 314; *Healy* v. *Lorain,* 1 Dev. & Bat. 626; *Collins* v. *Sullivan,* 135 Mass. 461; *Davis* v. *Hamlin,* 108 Ill. 39.

In this case there was neither payment of purchase money nor a violation of duty in taking the conveyances, (there were several from different heirs,) to appellant, nor did appellees

have any interest in the lands, legal, equitable or honorary, whereby they suffered any injury in failing to acquire the lands in controversy.

On the showing of appellees, there were no circumstances of special confidence between the parties.

Messrs. COMSTOCK & HESS, for the appellees:

The Statute of Frauds was intended to suppress frauds, and courts of equity will always interpose to prevent its being used as a shield to protect fraud. *Ryan* v. *Nevins*, 34 N. Y. 307; *Jenkins* v. *Eldridge*, 3 Story, 181; *Manning* v. *Hayden*, 5 Sawyer, 360; 1 Perry on Trusts, sec. 85.

A trustee will not be permitted to purchase property with reference to which he is placed in a situation of trust and confidence. 1 Story's Eq. Jur. sec. 323.

If an agent employed to purchase for another, purchases for himself, he will be considered as a trustee for his employer. *Terry* v. *Bank of New Orleans*, 9 Paige, 649; *Van Epps* v. *Van Epps*, 9 id. 237; *Parkist* v. *Alexander*, 1 Johns. Ch. 394; *Banks* v. *Dudale*, 8 Conn. 145; *Johnson* v. *Blackman*, 11 id. 342; *Church* v. *Sterling*, 16 id. 388; *Day* v. *Roth*, 18 N. Y. 448; *Safford* v. *Hynds*, 39 Barb. 625; *Baker* v. *Whiting*, 3 Sumner, 476; *Reitz* v. *Reitz*, 80 N. Y. 538; *Bartholomew* v. *Leech*, 7 Watts, 472; *Ringo* v. *Binns*, 10 Pet. 269.

But it is not necessary, in order to bring the defendant within the rule laid down, that he should have made any actual agreement to secure the property for the complainants. It is sufficient if he was placed in such a position of confidence with reference to the premises, that any purchase by him would be inconsistent with his duty to the complainants. *Davis* v. *Hamlin*, 108 Ill. 39.

Wherever one person is placed in such relation to another by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him or interested

with him in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated. *Merryman* v. *David*, 31 Ill. 404; *McDonald* v. *Fithian*, 1 Gilm. 269; *Dennis* v. *McCagg*, 32 Ill. 429; *Klock* v. *Walter*, 70 id. 417; *Hughes* v. *Washington*, 72 id. 85.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

In the fall of 1884 and winter of 1884 and 1885 the appellees were merchants, engaged in business under the firm name of Tedens & Co. in the town of Lemont in Cook county. One Walker had become largely indebted to them and had given them a mortgage upon certain lands owned by him in DuPage county. This mortgage they had foreclosed and had acquired title to the lands embraced in it through the foreclosure sale. In addition to this, they also had judgments against Walker, which they were desirous of making out of whatever lands or interests in lands he might own that were not included in the mortgage.

At this time appellant was the county surveyor of DuPage county. He was also engaged in the business of examining titles and making abstracts of titles, and had an office, where he carried on such business, in Wheaton, DuPage county. On November 18, 1884, appellees wrote to appellant the following letter:

"LEMONT, ILL., *November 18, 1884.*
"*County Surveyor, Wheaton, Ill.:*

"DEAR SIR—When can you come and make survey of the land known as the 'Walker tract,' in DuPage county? We now own it, and wish to fence and rent; therefore a survey is very necessary. Hoping you will favor us with an early reply, and that you will come soon, now while the weather is so fine and good for such work, we are

Yours, etc.,        J. H. TEDENS & Co."

Pursuant to the notice contained in this letter appellant
went to Lemont on December 1, 1884, and was there engaged
for four days in making surveys for appellees and in consult-
ing with them about titles to property, in which Walker was
supposed to have an interest. The land or a part of the land,
to which appellees had acquired title by the foreclosure pro-
ceeding, consisted of about one hundred acres in that part of
the north-east quarter of section 15 lying north of the north
channel of the Des Plaines river, there being an island at this
point, around which the river flows in two channels, one to
the north and the other to the south of the island. The land
in controversy in this suit is a tract of forty-five acres, situated
on the island in question in the south-east corner of the north-
east quarter of section 15, south of the north channel of the
river, and opposite the one hundred acres above mentioned.

Appellees had supposed until after the foreclosure, that the
forty-five acres were included in their trust deed; this, how-
ever, did not prove to be the case. They had also supposed
that the forty-five acres belonged to Walker. Walker had
been in possession of it at 'one period for some twelve years or
longer, and was reputed to have acquired his title from a widow
named Warden, who had also owned the balance of section 15.
While appellant was in Lemont during the first four days of
December, 1884, he also shared the belief that Walker had
title to the forty-five acres, although both he and appellees
were aware at this time that the land was not taxed. While
engaged in this survey for appellees, appellant learned from
them the location and surroundings of the forty-five acres.
Both the appellees swear, that, on December 2 or 3, they em-
ployed appellant, as an examiner of titles, to search the records
and look up the title to the forty-five acres and to assist them
in acquiring such title. They are confirmed in their statements
by the testimony of one Graves. At the same time they gave
appellant a list of other lands in sections 14, 15 and 16, in
which Walker was supposed to be interested, and employed

him to ascertain the condition of the title to these lands with a view of subjecting them to the payment of their judgments.

On the evening of December 4, when appellant left Lemont, appellees placed in his hands their own abstract of title to the lands they had obtained from Walker, and requested him to examine the title, so that, if there were any defects, they might be remedied.· At their request he made a map of the lands lying in sections 14, 15 and 16 and left it with them.

Appellant procured the title to the forty-five acres in question for himself, denying the existence of any agreement to obtain it for appellees, and pleading the Statute of Frauds. The object of this bill is to compel him to convey the land to appellees, on the ground that he holds it as their agent and trustee.

After leaving Lemont appellant made examinations in the records and tax books of Du Page county and in the books of certain abstract makers in Chicago, and on December 8, 1884, wrote the following letter:

"WHEATON, ILL., *December 8, 1884.*
"*J. H. Tedens & Co., Lemont, Ill.:*

"GENTS—I have looked up the 5.07 acres N. Frac. N. W. ¼ Sec. 14, 37.11, and find that it was entered June, 1835, by Philip C. Latham, and conveyed by him to Thomas Haughan June 5, 1842. I don't think it has been conveyed since by the owner. As to the 45 or any Island Frac. N. ½ Sec. 15, 37.11, the title is in either the canal trustees or to whom they sold it. There is no deed or record of the tract to any persons. Island Frac. of Sec. 16, is still in the State of Illinois, for use of, etc., of T. 37.11. If you wish me to go and see the records in canal commissioners' office, I can do so as soon as you send to me. I don't find that Roebuck has any title on Sec. 14, S. of river, or on the island. Please give inclosed to Tagerstrum. I have not yet been through examination of the abstract as to your title, but I think I will have time this week.

Yours,                                     J. G. VALLETTE."

This letter amounts to a written statement by the defendant, that he was acting as the agent of the appellees in looking up the titles to various pieces of land including the forty-five acres, and also that he was acting as their attorney in examining for them the title which they already had. He states the result of his investigations as to the forty-five acres, and proposes to make further investigations at the office of the canal commissioners, if appellees shall send to him to do so. The appellee, Tedens, swears that he answered the letter of December 8, telling appellant to go ahead and visit the canal office and "look up the title there," and that he would be paid for his services. His testimony as to the contents of the answer was given after appellant's failure to produce it upon being notified to do so. Appellant denies that he received any reply to the letter of December 8.

Appellant sent to the canal office for information and obtained therefrom a paper, dated December 14, 1884, showing that the north fraction of the north-east quarter had been sold by the canal trustees to John B. Witt and that the certificate of purchase had been assigned to Peter Warden, and also showing that the forty-five acres had been sold by the trustees on September 11, 1848, to John B. Witt. Witt had died, and, in order to get title, it became necessary to obtain conveyances from his heirs.

On January 3, 1885, appellant again went to Lemont and continued the survey for appellees, which he had not finished in December. Appellee, Tedens, swears that, during this visit in January, appellant spoke of some of the heirs as being in Iowa and of some as living in Kansas, and expressed his intention of going to Kansas, as soon as he finished the survey he was then engaged in making. Appellant swears, that at this time in January he had no conversation whatever with either of the appellees about the forty-five acres, except that, when he and Thormahlen were at the land, he asked Thormahlen what it was worth and was told that its value was $50

or $75 per acre. If the statement of appellee, Tedens, as to what took place when appellant was in Lemont on January 3, 1885, is true, then appellant led the appellees to believe that he was trying to obtain the title of the Witt heirs for them and not for himself. If his own statement is true, then he acted unfairly towards the appellees in concealing from them what he had learned from the canal commissioners on December 14, namely, that the title to the forty-five acres was not in Walker, but in John B. Witt or his heirs. That information was procured by him while acting as their agent and in pursuance of their employment, and should have been communicated to them. Instead of making them acquainted with the real condition of affairs, he went to work to procure the title for himself, while engaged in their service.

On January 5, according to his own evidence, he opened negotiations with the heirs for the purchase of their interest, and, by the second day of February, had procured conveyances from them to himself. On January 9, 1885, he sent the following letter to appellees:

"WHEATON, ILL., *January 9, 1885.*

".*J. H. Tedens & Co.:*

"GENTS—Do you want me to make abstract of lot 13, School Trustees Sub. of Sec. 16, 37.11 ? I think you had better only show title acquired by Edwin Walker, and it may be better to have full abstract made new, and show the full proceedings followed by your deeds, so as to show your full title in the whole business. I think it will pay you. Also, what will you give for the forty-five acres on the island, if I can get a title for you?

Yours very truly,     J. G. VALLETTE."

It is here apparent that appellant was acting as agent and adviser of the appellees, and was still holding out to them the idea that the title to the forty-five acres was to be obtained for them. They replied to his letter as follows:

"LEMONT, ILL., *January 17, 1885.*
"*J. G. Vallette, Esq., County Surveyor, Wheaton, Ill.:*

"DEAR SIR—Our Mr. Tedens will call on you next Tuesday or Wednesday in regards examination abstracts and tracts and adjoinings you have surveyed for us. If not convenient for you to meet him on them days, please so inform us.

Yours, etc., J. H. TEDENS & Co."

Appellee, Tedens, swears, that, on January 21, 1885, he met the appellant at the office of Haddock, Vallette & Rickords in Chicago, and it was there agreed between them that appellant should acquire the title to the forty-five acres for the appellees, and that appellees should pay him for his services and disbursements in that behalf the sum of $1000; that he, Tedens, then and there paid appellant $50 upon the agreement so made. Appellant admits that he met Tedens at the office named on January 21 and had a conversation with him about the forty-five acres; that Tedens asked him how much he wanted for getting the title for them to the forty-five acres, and he replied: "I didn't know how much it was going to cost, but proposed to make $1000 clear." Appellant also admits that he received the $50, but claims that it was paid on account of the abstract he was going to make of the other lands, and not upon any agreement in reference to the forty-five acres; he says: "I told him (Tedens) I wanted $50 to apply on it (the abstract), as I was going to spend considerable money— *as I was going out to see the Witts I wanted some money.*"

The conveyances from the Witt heirs to the appellant bear date February 2, 1885. After this in the month of February appellant had one conversation with Tedens in which he said: "I am still fighting for you," and another in which he said, in regard to the forty-five acres, that "he hadn't it ready yet," that "he hadn't it finished up yet," "it may take a suit yet to get it." Tedens states in regard to the latter interview: "I could not get much out of him at that time."

On February 24, 1885, appellant had another interview with appellees at Lemont, and they there paid him $30 and took the following receipt:

"LEMONT, ILL., *Feb. 24, 1885.*

"Rec'd from J. H. Tedens & Co., Lemont, Ill., thirty dollars, for balance abstract making.

$30.00.                    J. G. VALLETTE."

This payment of $30 was made in the store of appellees at Lemont and the above receipt with the exception of the word, "balance," and the signature, was written by a clerk of appellees; who was directed to draw it up by appellee Tedens. As at first drawn, it read: "Rec'd from J. H. Tedens & Co., etc., thirty dollars for abstract making." After the receipt was written, appellant inserted the word "balance" in such a way that its insertion was not noticed by Tedens. The purpose of putting in the word "balance" was evidently to confirm the theory, that the $50, paid on January 21, had been paid for abstract making and not upon an agreement to obtain the forty-five acres.

Upon his direct examination appellant's testimony in regard to this receipt is as follows: "This is the receipt for the $30, that was given me at their office for the last cash balance on abstract. Is that receipt just exactly as it was as you made it, as you signed it? Yes sir. And was it made there in Mr. Tedens' presence? It was. Who wrote it? Their clerk. *That is all his writing is it? All except my signature.*" Upon his cross-examination appellant testifies as follows: "Do you say that Mr. Tedens was present when you received $30 from his clerk? Yes sir, because he went to the clerk himself and told him to pay it to me. Was he present when that receipt was signed for the $30? I don't know whether he was or not. Did you direct that word? *I put that word in after it was written, that 'balance.'* After the receipt was written you wrote that word 'balance' there yourself? Yes sir, before I signed it. You do not know whether Mr. Tedens saw it or not? * * *

I don't know whether he saw it or not. * * * *You put the word 'balance' in there after it was written out and signed? I did,"* etc.

On February 28, 1885, the following letter was written to the appellant by the appellees:

"*J. G. Vallette, Esq.*               "LEMONT, ILL., *Feb. 28, 1885.*

"Yours at hand, and in reply can say that Peter Warden's address is Osburn City, Osburn Co., Kansas. He lives within three miles of Osburn City, on a farm.

"I will be in Chicago next Tuesday; would like to have the abstract there then, at Mr. Comstock's office.

Yours respectfully,               J. H. TEDENS."

The evidence tends to show what has already been stated that Walker had obtained his title to the one hundred acres, north of the channel, in the north-east quarter of section 15, from one of the Wardens, and it was supposed that he had also obtained from the same source the title to the forty-five acres in the north-east quarter of section 15 that lay south of the channel. The widow, Warden, was selling the timber upon the forty-five acres as far back as 1866, and, at that time, Tedens himself had drawn a contract between her and some other party in reference to the sale of such timber. .

The letter of February 28 shows, that on that day appellant was still acting for the appellees in reference to the matter of title. It also shows, that, having already obtained the interests of the Witt heirs in the forty-five acres, he was preparing to get whatever interest the Wardens might have. At this time appellees were ignorant that he had obtained for himself the title of the Witt heirs and supposed that he was working to secure that title for them. He was not only concealing from them the fact that he had procured the Witt interest, but he was making use of them, so as to obtain from them such information as would enable him to get hold of the Warden interest. They did not learn until they were so informed in April,

1885, by the county clerk of Du Page county, that the appellant had caused the conveyances of the forty-five acres to be made to himself, that he "had that property in his own name on record."

We forbear to refer further to the evidence. It is quite evident, that appellant acted unfairly towards the appellees while sustaining to them a confidential relation. The facts in this case bring it within the rule laid down in *Davis* v. *Hamlin*, 108 Ill. 39.

Appellant was the county surveyor of DuPage county, elected to that office by the people. Appellees extended to him a confidence, which they would not have felt but for his official position. By virtue of that position he came in contact with them and, while engaged in surveying their land, learned its situation and value, and became acquainted with their relations to the surrounding lands.

As a man, experienced in the examination of titles and engaged in the business of making abstracts of title, he was intrusted with their valuable papers and employed to ascertain whether there were any defects in their title. He undertook to help them collect their judgments by finding out what lands their judgment debtor owned and what sort of title he had to the same. Persons engaged in the business of making abstracts of title occupy a relation of confidence towards those employing them, which is second only, in the sacredness of its nature, to the relation which a lawyer sustains to his client. Such persons consult the evidences of ownership and become familiar with the chains and histories of title. They handle private title papers and become aware of whatever weaknesses or defects may exist in the legal proceedings, through which the ownership of real property is secured. They should be held to a strict responsibility in the exercise of the trust and confidence, which are necessarily reposed in them. Any abuse of such trust and confidence should be met with emphatic rebuke.

Although it was shown upon investigation, that Walker had no record title to the forty-five acres, yet he had been in possession of it for many years and had exercised acts of ownership over it; appellees supposed him to be owner and employed appellant to ascertain the nature of Walker's interest, not with a view to speculation but for the purpose of subjecting that interest to the payment of honest debts. It was learned, that in 1848 the canal trustees had sold the property to one Witt, who had died, and whose heirs had gone off and abandoned the land. Appellees desired and expected by the purchase of the Witt interest to realize something towards the payment of their judgments. Appellant undertook and agreed to act for them as their agent in obtaining that interest. But his employment in this regard grew out of and followed from his previous employment to examine the titles to this and other tracts and to act for appellees in surveying land, in making abstracts of title and in pointing out, with a view of correcting, defects in title. He was not simply an agent to purchase, as in *Perry* v. *McHenry*, 13 Ill. 227, but his agency to purchase was part of a broader agency, that concerned other matters and involved greater confidence and a more delicate trust.

Appellant's relations to appellees were of such a confidential character and his conduct towards them was marked by such unfairness, that we feel justified in regarding him, as a trustee holding the forty-five acres in question for their benefit. The circuit judge took this view and we think the decree he rendered was correct.

The decree of the circuit court is accordingly affirmed.

*Decree affirmed.*