TEOFILIA GONZALIA *et al.*

*v.*

FRANK BARTELSMAN.

*Filed at Mt. Vernon November 3, 1892.*

1. TAX TITLE—*parties to be served with notice of sale.* The owners or parties interested in land sold for taxes, who are entitled to notice of the tax sale under article 9, section 5, of the constitution, and section 216 of the Revenue act, are those who are such at the time the notice is served or published; and the affidavit of the service of such notice must show that the persons served were the "owners or parties interested" at that time.

2. Neither the constitution nor the statute contemplates the service of notice upon persons who have ceased to be owners or parties interested in the land at the time of the service. Purchasers and persons otherwise acquiring rights in the land sold for taxes after the giving of such notice, occupy the position of purchasers *pendente lite.*

3. An affidavit made to entitle the party to a deed for land sold for taxes is fatally defective if it fails to show service of the notice of sale upon those interested at the time of giving the notice.

4. SAME—*occupants entitled to notice of sale for taxes.* The constitution, in requiring that occupants shall in all cases be served with personal notice before the time of redemption from a tax sale expires, and the statute to the same effect, refer to such persons as are occupants at the time of the service of the notice.

5. An affidavit showing notice of a tax sale, and when the time of redemption will expire, which states that the service of the notice was upon the persons interested in and occupying the land when it was sold, is fatally defective, and a tax deed based on such an affidavit will be void.

6. SAME—*who may not acquire tax title—agent.* A party while employed as an agent of the owner of land, or of a mortgage thereon, to have the mortgage foreclosed and to pay taxes and collect the rents thereon, can not, by allowing the land to be sold for taxes, acquire a tax title on the same. Whatever interest he thereby acquires will be held by him in trust for his principal.

7. SAME—*defects therein—notice to purchasers.* A party holding under the grantee in a tax deed, either by purchase or mortgage, can not be regarded as a *bona fide* purchaser without notice of defects in the tax title. He will take the tax title subject to its existing infirmities.

8. NAMES—*whether the doctrine of idem sonans applies.* A person who served a notice of a tax sale, made his affidavit, in which he described the person served, as "Fred Meyers," but failed therein to show that Fred Meyers was in possession, etc., at the time of the service. An affidavit of another person who did not make the service was made, in which the person served as in possession was described as "Fred Meyer," and there was no statement in the affidavit that Fred Meyer and Fred Meyers were the same person : *Held,* that the latter affidavit could not cure defects in the former. The doctrine of *idem sonans* could not be made to apply to two such distinct names.

WRIT OF ERROR to the Circuit Court of Jackson county; the Hon. A. K. VICKERS, Judge, presiding.

Messrs. SMITH, McELVAIN & HERBERT, for the plaintiffs in error.

Messrs. MARSHALL W. WEIR, and Messrs. HILL & MARTIN, for the defendant in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is a bill, filed on September 12, 1890, in the Circuit Court of Jackson County, by the defendant in error, Frank Bartelsman, against the plaintiffs in error Teofilia Gonzalia, William Homeier and Julia Homeier, for the purpose of·setting aside—as clouds upon the complainant's title to S. W. ¼ and W. ½ N. W. ¼ S. 3, T. 9 S., R. 4 W. of 3d P. M. in Jackson County—a tax deed issued to said Homeier, and a mortgage executed by said Homeier and his wife to the said Gonzalia, and a decree of foreclosure of said mortgage; and also for an accounting by said Homeier, as complainant's agent, for moneys received and rents collected, etc. Answers were filed by the defendants, which were replied to. After proofs taken and hearing had, the Circuit Court entered a decree, granting the relief prayed for as to the tax deed and mortgage by cancelling and setting the same aside; and, upon the accounting, finding that Homeier was indebted to complainant, for excess of monies received over·monies paid out for costs, attorney's fees and taxes, in the sum of $58.50.

On October 9, 1883, Frederick Meyer, being the owner of said land, amounting to 226.42 acres, borrowed $1500.00 of complainant, and executed to him a mortgage thereon to secure the loan. Meyer was brought into communication with complainant by Homeier, and the three went together to look at the land before the loan was made. About March, 1886, Meyer, having failed in his payments of interest, was willing to deed the land to complainant in discharge of the mortgage, but Homeier prevented the execution of the deed, and advised complainant to file a bill to foreclose the mortgage. At this time Meyer told complainant and Homeier, that the land had been sold for taxes, and Homeier promised complainant to see that the taxes were paid. On March 21, 1886, complainant

delivered the principal note for $1500.00, and the overdue interest notes, to Homeier to be sent to a lawyer, named J. B. Mayham, at Murphysboro to be foreclosed. Foreclosure proceedings were accordingly begun; decree of foreclosure was entered; the property was sold under the decree on April 7, 1886, to the complainant, and a master's certificate of sale issued to him; on April 21, 1888, the complainant received the master's deed. In May and June, 1886, complainant paid Homeier money for the costs and expenses of the foreclosure suit. Homeier agreed to rent the land and pay the taxes out of the rent.

On June 5, 1884, the land was sold for the taxes of 1883 to Ezekiel Barber, to whom the certificate of purchase was issued. Barber sold and assigned the certificate to Homeier on June 3, 1886, and the county clerk issued a tax deed to Homeier on July 16, 1886. The affidavit of service of the notice of the purchase at the tax sale, under section 216 of the Revenue Act, was made by Barber on June 7, 1886. The affidavit presented to the county clerk in order to obtain the tax deed was made on July 16, 1886, by "J. B. Mayham, agent for William Homeier." On May 19, 1886, Homeier and wife executed a mortgage for $2500.00 to appellant, Gonzalia. This mortgage really belonged to one M. F. Megiro, and was executed to secure an indebtedness from Homeier to Megiro, the name of Megiro's sister, Teofilia Gonzalia, having been used at his request and for his convenience. The complainant did not learn of the tax deed obtained by Homeier, or of the mortgage executed by him, until after the execution of the master's deed in October, 1888.

It is manifest, from the foregoing recital of facts, that, aside from any question as to the validity of the tax deed upon strictly legal grounds, Homeier cannot set up any title under that deed as against appellee, because he was appellee's agent when the certificate was assigned to him and when the tax deed was executed to him. Where an agent is employed, not

only to procure a foreclosure of his principal's mortgage and to employ an attorney for that purpose, but also to rent the property upon which the mortgage rests and to pay the taxes thereon, he cannot acquire a tax title to such property for his own benefit.    The title so acquired by such an agent during the existence of the agency will be regarded in equity as a title held in trust for the principal.    Whatever interest, if any, vested in Homeier by the execution to him of the tax deed on July 16, 1886, vested in him as appellee's trustee, and was held by him subject to the right of appellee to demand a conveyance thereof upon payment of the cost of obtaining the certificate and deed.

It is claimed, that appellant took the mortgage upon the land from Homeier in good faith without notice of appellee's rights, and that such a mortgagee must be regarded as a *bona fide* purchaser for a valuable consideration without notice of prior equities.    There would be force in this position, if there were no other objection to the tax deed than that which grows out of the relations between the appellee and Homeier as above referred to.    But we regard the tax deed as invalid for the reasons hereinafter stated.

The affidavit of Mayham states, that the notice of the purchase at the tax sale, required by said section 216, "was given and served by Ezekiel Barber, the original purchaser and assignor of William Homeier as aforesaid, and is, together with the affidavit of such service, attached hereto and made a part hereof."    Barber's "affidavit of such service attached" thereto declares, that he served the notice "on the 13th day of January, A. D. 1886, by reading the same and delivering a copy thereof to Fred Meyers, being the person then in possession of the lands described in said notice; also by reading the same and delivering a true copy thereof to Fred Meyers on the 13th day of January, A. D. 1886, being the person in whose name said land was taxed when sold; and also by reading the same and delivering a true copy thereof to Fred Meyers

and Wm. A. Hicks, on the 13th day of January, A. D. 1886, they being the parties interested and occupying the said lands when the same was sold."

The constitution requires that "the General Assembly shall provide by law for reasonable notice to be given to owners or parties interested by publication or otherwise," etc. (Cons. of 1870, Art. 9, sec. 5). The legislature has provided in section 216 of the Revenue Act, that the notice therein described shall be served on "the owners of or parties interested in said land or lot, if they can upon diligent inquiry be found in the county," etc. The owners, or parties interested, here referred to, are those who are such at the time the notice is served or published. It was said in *Taylor* v. *Wright*, 121 Ill. 455, that "purchasers and persons otherwise acquiring rights in the property after the giving of such notice, would simply occupy the position of purchasers *pendente lite*, and be governed by principles applicable to such purchasers." But neither the constitution, nor the statute contemplates the service of notice upon persons, who have ceased to be owners, or parties interested in the land. The object of giving the notice is to enable those, in whose favor the right of redemption exists, to exercise that right; and only those, who are owners of the land or interested in it when the notice is served, will derive any benefit from such notice, or can have any motive to act upon it.

The foregoing affidavit does not state, that notice was served upon the owner of the land at any time, nor does it state that notice was served at any time upon the parties interested in the land, unless the expression, "the parties interested," can be construed to mean, "the parties interested *in the land*." If the affidavit can be interpreted as stating that the notice was served upon the parties interested *in the land*, it only declares that such parties, as were interested in the land "*when the same was sold*," were served with notice. The land was sold for taxes on June 5, 1884, a year and seven months before the service of the notice on January 13, 1886. The parties, who were

interested in the land on June 5, 1884, may have parted with their interest before January 13, 1886. The affidavit is defective in showing service upon those who were interested at the time of the sale, and in not showing service upon those interested at the time of the giving of the notice.

The same observations apply to the question of occupancy. The constitution, in requiring that "occupants shall in all cases be served with personal notice before time of redemption expires," (Art. 9, sec. 5), and the statute, in providing for service "on every person in actual possession or occupancy of such land," manifestly refer to such persons as are occupants at the time of the service of the notice. But the affidavit in this case states, that service was had upon persons "occupying the said lands when the same were sold." The occupancy may have changed between June 5, 1884, and January 13, 1886, and those who were occupants at the former date may have ceased to be such at the latter date.

The defects in the affidavit of Barber, who made the service, are not cured by the affidavit of Mayham, who did not make it. The latter affidavit avers, that notice was served upon Fred Meyer, the owner, and upon Fred Meyer, "the only person then in actual possession or occupancy of said * * * land." But the doctrine of *idem sonans* cannot be made to apply to two such distinct names as Meyer and Meyers; and the affidavit does not show, that Fred Meyers and Fred Meyer were one and the same person. (*Gage* v. *Mayer,* 117 Ill. 632.)

Where a tax deed is invalid for such reasons as are above set forth, a party holding under the grantee in the tax deed, either by purchase or mortgage, cannot be regarded as a *bona fide* purchaser without notice; he takes the tax title subject to its existing infirmities. Therefore, the appellee is entitled to have the tax deed set aside as well against appellant as against Homeier.

The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*