ARTEMISA DAVIS *et al.*

*v.*

EMMA STAMBAUGH *et al.*

*Filed at Springfield November 10, 1896.*

1. TRUSTS—*revoked will does not take trust out of Statute of Frauds.*
A will expressly revoked and destroyed by the testator is insuffi-
cient to take a trust out of the Statute of Frauds, which requires
all declarations or creations of trusts in land to be proved by some
writing signed by the party, or by his will in writing.

2. SAME—*when will does not raise trust in lands conveyed.* A trust in
property conveyed cannot be raised, under the statute requiring
all creations of trusts to be proved by writing or will, by a will
executed long before, and not referred to, directly or indirectly,
in the deed, especially where the trusts are different from those
provided in the will.

3. SAME—*parol trust not aided by party's deposition taken under com-
pulsion.* A parol trust is not taken out of the Statute of Frauds by
the deposition of the party to be charged, taken under compulsion,
as such deposition cannot be given greater force than a sworn an-
swer, and the latter will not be used as a declaration of trust where
the defendant sets up the Statute of Frauds in bar.

4. SAME—*when equity will not enforce verbal promise as a constructive
trust.* Equity will not, in the face of the Statute of Frauds, relat-
ing to trusts, enforce a verbal promise as a constructive trust or
trust *ex maleficio,* because of the refusal of the trustee to execute
it or his denial of its existence.

5. SAME—*what will establish a trust ex maleficio.* To take a parol
trust out of the Statute of Frauds and establish a trust *ex maleficio*
the transaction must be in fact a scheme of actual deceit.

APPEAL from the Circuit Court of McDonough county;
the Hon. CHARLES J. SCOFIELD, Judge, presiding.

WHEAT & MELOAN, and SHERMAN & TUNNICLIFFS, for
appellants:

Equity acts on weaker evidence than law, and is not
restricted by its rigid rules.    Snell's Eq. 383; Story's
Eq. Jur. sec. 190.

The grantor may declare the trust in the will or the
deed by which the land is conveyed or devised, or in an
instrument separate and distinct from the conveyance.

2 Pomeroy's Eq. Jur. sec. 1007; *Kingsbury* v. *Burnside*, 58 Ill. 310; *McLaurie* v. *Partlow*, 53 id. 340.

A memorandum signed by the deceased, not addressed to any person, found among his papers, is a sufficient declaration of a trust. *Lynch* v. *Clements*, 24 N. J. Eq. 431; Hill on Trustees, 64.

Either the grantor or grantee in trust is competent to declare the trust. Hill on Trustees, (2d Am. ed.) 62.

Where there is any written evidence that the person apparently entitled is not really so, that will open the door to the admission of parol evidence to prove the trust, notwithstanding the statute. Hill on Trustees, 62; Perry on Trusts, (3d ed.) sec. 83; Browne on Statute of Frauds, (5th ed.) secs. 111, 350; 2 Sugden on Vendors, (7th Am. ed.) 911; *Kingsbury* v. *Burnside*, 58 Ill. 329.

Even if the trust rest entirely in oral agreement between the devisor and devisee, it will be enforced, notwithstanding the absolute devise, if it appear the devise was made upon the faith of the devisee's agreement that he would carry out the trust. *Kingsbury* v. *Burnside*, 58 Ill. 335; Browne on Statute of Frauds, (5th ed.) sec. 107.

The evidence shows a constructive trust, or trust *ex maleficio*. 2 Washburn on Real Prop. 476; *Hayden* v. *Denslow*, 27 Conn. 335; *Wood* v. *Rabe*, 96 N. Y. 422.

The Statute of Frauds, having been enacted for the purpose of preventing fraud, should not be made the instrument of shielding, protecting or aiding the party who relies upon it, in the perpetration of a fraud or in the consummation of a fraudulent scheme, to the injury of innocent persons. 2 Pomeroy's Eq. Jur. sec. 921; 1 Story's Eq. Jur. sec. 330; *Wood* v. *Rabe*, 96 N. Y. 414; *Reigard* v. *McNeil*, 38 Ill. 400; *Allen* v. *Jackson*, 122 id. 571; *Insurance Co.* v. *White*, 106 id. 67.

BAILY & HOLLY, and NEECE & SON, for appellees:

A mere request, though in writing, by the intestate to his heirs to make a certain disposition of his property

does not create a trust enforcible in chancery. *Preston* v. *Casner*, 104 Ill. 262.

A trust cannot be implied merely from words indicating the motives which induced the conveyance. *Randall* v. *Randall*, 135 Ill. 399; *Giles* v. *Anslow*, 128 id. 187; *Bryan* v. *Howland*, 98 id. 625.

Where the trust is express there can be no foundation for an implied trust. *Moore* v. *Horsley*, 156 Ill. 36.

One who conveys land by deed absolute in form can not, by parol evidence, show the conveyance was in trust, where the statute is set up. *Lawson* v. *Lawson*, 117 Ill. 98.

No verbal understanding between a testator and his wife, as to her final disposition of property devised to her, will create a trust. *Allmon* v. *Pigg*, 82 Ill. 149.

The mere violation of a parol promise to dispose of lands as directed by the grantor does not constitute such a fraud as to take the case out of the statute. *Rogers* v. *Simmons*, 55 Ill. 76; *Scott* v. *Harris*, 113 id. 447; *Allmon* v. *Pigg*, 82 id. 149; *Lantry* v. *Lantry*, 51 id. 458; *Perry* v. *McHenry*, 13 id. 236; *Adams* v. *Adams*, 79 id. 517.

Mr. JUSTICE BAKER delivered the opinion of the court:

The bill alleges, in substance, that on and prior to September 20, 1892, Adam Stambaugh was the owner of certain described tracts of land which were reasonably worth $20,000; that he was seventy-four years of age and suffering from an incurable disease, and anticipated an early death; that he reposed great confidence in his wife, Emma Stambaugh, to whom he had been married since September, 1863; that he desired and undertook to divide his real estate equitably between his said wife and his three children and heirs-at-law, Artemisa Davis, Sabina Griffith and Hattie Rodgers; that said Adam and his said wife, Emma, joined in making an absolute deed for said lands to one Thomas J. Welch, and that Welch immediately conveyed the same by like absolute deed to said Emma Stambaugh; that said Emma stated to said Adam

that if he would convey the real estate to her she would accept and hold the real estate and dispose of the same in the manner he directed at the time of the conveyance to her, and that he then informed her that he wanted the lands disposed of and divided as follows: the north-west quarter of section 12, etc., after his death to be sold and the proceeds equally divided among his said three children, and the south-east quarter of section 14, etc., and the other real estate, to be used and enjoyed by the said Emma Stambaugh during her lifetime, and at her death to be equally divided among said three children. The bill charges that Adam Stambaugh was induced to make the conveyances transferring title to her by her oral promises to comply with his said wishes and requests, and that such promises were the sole inducement and consideration for the conveyances, and that since the death of said Adam Stambaugh the said Emma Stambaugh has refused to carry out the directions of the deceased or to perform the promises whereby she induced him to convey the lands to her, and claims that she owns the same in fee, and has the absolute right to control, sell and use the same in any manner she may see fit. The prayer of the bill is for a decree establishing and executing the trust, and for other and further relief. The answer of Emma Stambaugh admits that on September 20, 1892, Adam Stambaugh was seized in fee of the premises, and was in feeble health; denies that he tried to or did dispose of his lands for the purpose of dividing the same among his children; denies that she induced him to make the deeds by any promises, or that the premises were conveyed to her in trust or because of any inducements held out by her; alleges that said Adam voluntarily conveyed to her for the purpose of investing her with the absolute fee, to use and dispose of as she might see fit, unencumbered with any trust of any kind whatever; and said answer sets up the Statute of Frauds, and insists upon and claims the benefit of the same. The cause was

heard in the circuit court of McDonough county upon bill, answer, replication and proofs, and a decree rendered dismissing the bill for want of equity.

Section 9 of the Statute of Frauds provides that "all declarations or creations of trusts or confidences of any lands, tenements or hereditaments shall be manifested and proved by some writing signed by the party who is by law enabled to declare such trust, or by his last will in writing, or else they shall be utterly void and of no effect."

It appears from the evidence that Adam Stambaugh, on the 4th day of August, 1892, made a will; that afterwards, in the presence of the witnesses J. G. Rippittoe and S. D. Barrett, he tore said will into three pieces, announcing to them that he wanted said will destroyed, and expressly called upon them to witness that such was his wish.   The first contention made by appellants is, that this will, signed by Adam Stambaugh, is sufficient to take the case out of the statute.   There are several reasons why this contention cannot prevail.   In the first place, the will and its provisions were expressly revoked and destroyed by said Adam, as is shown by the evidence of said witnesses.   In the second place, the deed to appellee, which was executed and acknowledged long after the making of such will, makes no reference to the will or its provisions, either directly or indirectly, and there is therefore no ground upon which it can be claimed that the conveyance to appellee was for the purpose of carrying into effect the provisions of the will.   And in the third place, the trusts claimed in the bill are very materially different from the disposition of the property that the will made provision for.   According to the trusts alleged in the bill, the land in section 12, upon the death of Adam Stambaugh, was to be sold and the proceeds of sale equally divided among the three children, whereas by the will there was "devised to Emma Stambaugh, out of said tract of land," the sum of $2000, to be hers abso-

lutely, said land not to be sold until one year after the probating of the will, and the rents for said land for that year directed to be paid to Emma Stambaugh; and according to the trusts alleged in the bill, said Emma Stambaugh was given a life estate in the real estate other than that in sections 12 and 14, with remainder to the three children, whereas by the provisions of said revoked will all the real estate other than that in sections 12 and 14 was devised to said Emma Stambaugh "to be hers absolutely."

It appears from the record that a notice was given to take the deposition of Emma Stambaugh; that she did not appear, but that her attorneys appeared and stated they would agree to take her deposition if complainants would waive her signature to the same. This offer was declined. Thereupon the court made an order appointing a commissioner to take her deposition, and ordering that she "appear and give her deposition in said cause" and that she "shall sign the same." The deposition was taken and she signed it, prefacing such signature with this satement: "As I put my name to this paper I protest against it. It is the first time I have disobeyed my husband in any of the business. To-day I would rather go to the penitentiary than to take the step I am taking. But my attorney says the court will punish me if I don't. But I want the court to know I protest against doing this. I do not do it willingly." The substantial part of the deposition was this: "He (meaning Adam Stambaugh) said after he made those deeds to me, the 'squire came down and brought them and my husband was in the bed-room and I was not in the bed-room; after he came out I went into the bed-room, and my husband handed me the deeds and said, 'Here, take care of these deeds,' and after he handed me these deeds he said: 'Now, Ma, take care of these deeds and put them on record right away. Now, I believe you are perfectly honest, and feeling that Sim is a notorious rascal I have trusted this

now in your hands. I want the first year's rent of both farms to go to good causes, and give you six years in which to settle this business up. As Sim has had $1000 more than the other girls, Mrs. Griffith and Mrs. Rodgers, I want them all equal.' The first year's rent of both farms was to go to good causes, and the second and third years' rent of the Davis farm was to go to Mrs. Griffith, and the fourth and fifth years' rent of the Davis farm was to go to Hattie, to make them equal with Mrs. Davis who had received $1000 before, and the sixth year I was to have the rent of the Sim farm to repair the place, and at the end of the sixth year the Davis farm was to sell and I was to have $2000 and the rest was to be equally divided between the three girls, and the home farm was to be mine my lifetime and at my death to be divided among the children equally; and this property, the Colchester property, was my own, and the timber was to be divided between the children equally after my death, and the furniture and all the household goods and money was left to me without saying how to dispose of it. The rent money was not to be received by Mrs. Griffith and Mrs. Rodgers until the land is sold. He asked me to favor Mrs. Griffith by putting all her money in land. He wanted me to put her rent and what the place sold for,—her share of the place,—in lands, and to be deeded to her and her heirs. When he got done telling me this he said: 'Now, Ma, you know Sim Davis has always felt head and shoulders above us all, and when I am dead and gone he will want to take this business into his hands. Now, will you lay your hand in mine that you will never sign any papers that will ever take this business out of your hands until it is settled?' And I laid my hand in his dying hand that I would never put my hand to a paper that would take it out of my hands until it was settled."

The second contention of appellants is, that this deposition signed by Emma Stambaugh, the appellee, takes

the case out of the statute and establishes the trust. It will be conceded the deposition cannot be given greater force than a sworn answer; and the doctrine is, that even if the defendant confesses the parol trusts in his answer, yet if he at the same time sets up the Statute of Frauds and Perjuries in bar he will have the benefit of the statute, and the court will not use the answer as a written declaration and proof of the trust. (1 Perry on Trusts, sec. 85, and authorities there cited; Story's Eq. Pl. sec. 763.) The firmly established doctrine is, that even where the answer confesses the parol agreement, if it insists, by way of defense, upon the protection of the statute the defense must prevail as a competent bar. (2 Story's Eq. Jur. sec. 757.) A party who insists upon his statutory right and does not submit to waive it cannot be legally bound by a declaration or creation of trust which the statute declares to be utterly void and of no effect.

It is urged that the evidence shows a constructive trust, or trust *ex maleficio.* The settled doctrine is, that equity does not, in the face of the statute, enforce verbal promises. (2 Pomeroy's Eq. Jur. sec. 1056.) The mere refusal of a trustee to execute an express trust, or the denial of the existence of the trust by the trustee, does not constitute such fraud as takes the case out of the statute. (*Perry* v. *McHenry,* 13 Ill. 227; *Lantry* v. *Lantry,* 51 id. 458; *Scott* v. *Harris,* 113 id. 447; *Stevenson* v. *Crapnell,* 114 id. 19; *Lawson* v. *Lawson,* 117 id. 98; *Moore* v. *Horsley,* 156 id. 36; *Champlin* v. *Champlin,* 136 id. 309; *Allmon* v. *Pigg,* 82 id. 149; *Rogers* v. *Simmons,* 55 id. 76.) In order to take the case out of the statute and establish a trust *ex maleficio* the transaction by means of which the ownership of property is obtained must be in fact a scheme of actual deceit,—in other words, there must be an element of positive fraud accompanying the promise, and by means of which the acquisition of the legal title is wrongfully consummated, (2 Pomeroy's Eq. Jur. secs. 1055, 1056,) otherwise the Statute of Frauds would be virtually abrogated.

There is no evidence in the record that brings the case now before us within the rule that there is a trust whenever a person acquires the legal title to land by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified purpose. (*Allen* v. *Jackson*, 122 Ill. 567; *Larmon* v. *Knight*, 140 id. 232; *Moore* v. *Horsley*, 156 id. 36; *Gruhn* v. *Richardson*, 128 id. 178; *Reed* v. *Peterson*, 91 id. 288; *Biggins* v. *Biggins*, 133 id. 211; *Lantry* v. *Lantry*, 51 id. 458.) Even if it was or could be held that the case of plaintiffs in error is not within the Statute of Frauds, yet the trusts that they urge in their brief and argument are shown by the evidence are materially and essentially different from the trusts that are alleged in the bill. Allegations and proofs must correspond. A complainant in chancery is not entitled to a decree where one case is stated in the bill and a different case is shown by the evidence.

The case before us affords a marked illustration of the wisdom of the Statute of Frauds and Perjuries. Adam Stambaugh died and left him surviving his widow and three married daughters. The evidence of all four of them is contained in this record. No two of them agree, even substantially, as to what the verbal requests of Adam and the verbal promises of his wife were in respect to the final disposition to be made of the property conveyed by the deed. Each of the four states the requests and promises in the way that is most conducive to her own personal interest and advantage, and not one of the four would be content to have the supposed trusts established and enforced as testified to by either of the others; and the doctrine is, that a trust will not be executed if the precise nature of it and the proportions in which the *cestuis que trust* are to take cannot be ascertained. 1 Perry on Trusts, sec. 83, and authorities cited in notes.

There was no error in rendering a decree that dismissed the bill out of court. It is affirmed.

*Decree affirmed.*