**GRAND TRUNK WESTERN R. CO. v. CHICAGO & WESTERN INDIANA R. CO. et al.**

No. 7897.

Circuit Court of Appeals, Seventh Circuit.

May 18, 1942.

On Rehearing Sept. 15, 1942.

The rental was to be determined partly on the basis of use as measured by "wheelage basis," and partly on basis of capital stock ownership by the respective lessees.

The wheelage basis resulted in unequal rental payments, as some of the lessees used the property much more than others.

The defendant railroad, the lessor, was assessed a stock tax, which was paid by the lessees as an expense which, under the lease, was to be borne equally by the five co-tenants. This court, in the case of In re Chicago & E. I. Ry. Co., 7 Cir., 94 F.2d 296, decided that said capital stock tax was a "working expense" and was to be apportioned on a wheelage basis. Plaintiff, because of this mistake, overpaid its rental from 1912 to 1924, by $187,246.-19.

Below are set forth the amounts which the plaintiff overpaid its rental each year.[1]

Defendants filed answers, and the facts were then stipulated. The foregoing statements are not in conflict.

It also appeared that subsequent to the decision by this court, the railroad defendant sued and recovered from one of plaintiff's co-tenants, the C. & E. I. Ry. Co., the sum of $204,446.77; $148,709.25 covered the years 1925 to 1931, and $55,737.52, the years 1922 to 1924. It was denied recovery for 1912 to 1921. The moneys thus collected by the defendant railroad from the C. & E. I. Ry., have been kept in a separate fund since their receipt.

The plaintiff's theory is that the sum collected by defendant railroad is a trust fund, and that plaintiff is one of the *cestui que trust* of this constructive trust, and that it should recover its proportion thereof. It seeks to recover such proportion of said sum as its overpayments bear to the total overpayments made by it and any of its co-lessees who made overpayments.

In addition to denying the existence of any trust, defendants pleaded the Illinois statute of limitations, Ill.Rev.Stat.1941, c. 83, § 17. In other words, they contend that plaintiff's voluntary payment of moneys, which furnished the basis for its asserted right to share in the constructive trust, was made more than ten years prior to the commencement of the suit and was barred by the Illinois statute of limitations.

Silas H. Strawn, John C. Slade, and Bryce L. Hamilton, all of Chicago, Ill., and Victor Spike, of Detroit, Mich. (Winston, Strawn & Shaw, of Chicago, Ill., of counsel), for appellant.

Meyer Morton, Elmer W. Freytag, B. G. Stackhouse, Ernest S. Ballard, Francis H. Uriell, and J. R. Barse, all of Chicago, Ill., for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

Plaintiff, one of five co-tenants of the railroad properties of the Chicago and Western Indiana Railroad Co., one of the defendants herein, and hereinafter called the defendant railroad, through a mistake, made an overpayment of rental to said defendant railroad. This mistake occurred because it and other lessees misconstrued a provision of the lease, which was executed in 1888, for a term of two years, and which continued in force, though subsequently amended in other respects, to the present time. The five lessees owned all the stock of defendant railroad and in equal amounts.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| [1]1912 | $6,847.03 | 1919 | $12,515.64 | 1916 | 6,514.22 | 1923 | 25,970.18 |
| 1913 | 8,477.96 | 1920 | 18,647.79 | 1917 | 6,282.24 | 1924 | 28,043.18 |
| 1914 | 8,787.25 | 1921 | 25,532.35 | 1918 | 5,717.13 | | |
| 1915 | 7,250.00 | 1922 | 26,661.22 | | | | |

Plaintiff must, we think, rely solely upon its constructive trust theory. The road which it must travel is somewhat harder because the contract and the action of the parties must be measured, weighed, and defined in the light of the Illinois decisions. The law of Illinois governs, because the contract was there executed, and the actions dealt with were all within the confines of that state. It has in some quarters been observed that under the law of Illinois a fiduciary relation is not as broad and inclusive as in some other states. As to this, however, we are not required to make comparisons, but merely to apply the Illinois law.

As the basis of approach and disposition of this appeal, we accept two propositions or statements of the law which have been, or may be, advanced.

First, fraud or a fiduciary relationship is an indispensable basis of a constructive trust in Illinois.[2]

Second, a voluntary payment made under a mistake of fact affords a much better legal basis of recovery than is furnished by a mistake of law.[3]

In view of the lapse of time since it made its payments, plaintiff can not rely upon its mistake in making the overpayments, as a basis of recovery. Even though it were a mistake of fact rather than a mistake of law which caused it to make the erroneous payments, a position which it could plausibly take and possibly establish, recovery would be barred by the statute of limitations.

Plaintiff's case, therefore, must stand or fall on the existence of a constructive trust. The existence of such a trust is bound up and determined by the inclusiveness of the term "fiduciary relationship" under the Illinois decisions.

However, as in so many cases which present vexatious or perplexing questions, it is not the handicap of a difficult theory that is so troublesome, but it is the in-clusiveness and conclusiveness of the facts which furnish the high hurdles for one party or the other. And the facts in the present case speak loudly in favor of the equity of the plaintiff's claim and equally strong against the advancement of defendant railroad's objections to plaintiff's claim after it used the plaintiff's claim as the basis of its recovery against one of the other lessees.

The query which naturally arises to perplex defendant railroad is: What theory did it advance to support its recovery of $55,737.52 against another lessee? It had been paid its rental in full when its action was begun. Payments by all the lessees were voluntarily made more than ten years before it began its suit. Whether the lessees paid voluntarily out of a sense of fairness, or because of a judgment of a court of competent jurisdiction, makes no difference. The significant fact is that defendant railroad had received all the rentals due it, when it demanded and received this sum from a favored lessee. Only as the representative of plaintiff and other lessees who had overpaid their respective shares of the rental was there a basis for its action. It received payment from a lessee whose proper share was more than the one-fifth of the total rental. There being nothing due it, defendant railroad must have brought its suit for, and recovered for, plaintiff and other lessees who had paid more than their share. It thus received the moneys as the trustee of the plaintiff. The money which it received did not belong to it, but constituted a trust fund which it held for those lessees who had overpaid their share of the rental.

The appeal to a court of equity falls upon deaf ears, when it is shown, as here, that the pleader collected moneys on the theory that this plaintiff's overpayment should be adjusted and then seeks to hold the moneys thus collected from the plaintiff. This rather bold and bald attempt

2 Pope v. Dapray, 176 Ill. 478, 52 N. E. 58; Allen v. Jackson, 122 Ill. 567, 13 N.E. 840; Miller v. Miller, 266 Ill. 522, 107 N.E. 821; Streeter v. Gamble, 298 Ill. 332, 131 N.E. 589, 23 A.L.R. 1485; Delfosse v. Delfosse, 287 Ill. 251, 122 N.E. 484; Ryder v. Ryder, 244 Ill. 297, 91 N.E. 451; Davis v. Stambaugh, 163 Ill. 557, 45 N.E. 170; Roche v. Roche, 286 Ill. 336, 121 N.E. 621; McHenry v. McHenry, 248 Ill. 506, 94 N. E. 84; Beach v. Dyer, 93 Ill. 295; Schrader v. Schrader, 298 Ill. 469, 131 N.E. 602; Feingold v. Roeschlein, 276 Ill. 79, 114 N.E. 506; Sutherland v. Reeve, 151 Ill. 384, 38 N.E. 130; Gonzalia v. Bartelsman, 143 Ill. 634, 32 N. E. 532; Smith v. Wright, 49 Ill. 403; Vallette v. Tedens, 122 Ill. 607, 14 N. E. 52, 3 Am.St.Rep. 502; Lehmann v. Rothbarth, 111 Ill. 185.

3 Restatement of Law of Restitution, Sec. 45. See also Secs. 18, 20. 23 Harvard Law Review, 608.

at enrichment ought to, and we hold it does, place defendant in that group of fiduciaries, who must account willingly, or unwillingly, for the moneys it thus collected.

■ Authorities support this reasoning. "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Sec. 1, Restatement of the Law of Restitution.

"It is a general rule that where a tenant in common pays off an incumbrance on the common estate, equity will consider the incumbrance as still existing in order to enforce contribution from the cotenant. * * * Generally as between tenants in common of an estate bound by a joint lien, the part of each is held liable to contribute only its proportion toward the discharge of the common burden, * * * and if the part of one is called on to pay more than its proportion, the tenant thus paying the excess is entitled to stand in the place of the satisfied creditor to the extent of the excess which ought to have been paid out of the other share * * *. Likewise a cotenant who had paid more than his share toward the satisfaction of a mortgage on the property is to that extent subrogated to the rights of the mortgagee. The cotenant redeeming becomes, in effect, the assignee of the mortgagee, for the purpose of enabling him to obtain the whole title to the land, if the other owners decline to contribute their respective shares towards the removal of the incumbrance." 25 Ruling Case Law, Subrogation, Sec. 46.

■ While the burden was on the plaintiff in this case to establish a fiduciary, or confidential, relationship in order to create the trust, the proof of such fact may be made by a process of elimination, as well as by affirmative documentary evidence. It may be conceded that the proof must be clear and convincing. Streeter v. Gamble, 298 Ill. 332, 131 N.E. 589, 23 A.L.R. 1485. In fact, if there be a distinctive tone which characterizes the Illinois decisions, it is the requirement that proof of facts which establish the constructive trust must be clear and convincing. The facts in the present case are surely clear. If any question exists it must be over their sufficiency to establish the relationship.

The conclusion which is to be drawn from the facts likewise must be, and is, persuasively clear. Defendant railroad did not *receive* the moneys adversely to plaintiff. It obtained the money through no individual right of its own, but only as the special representative of the plaintiff. If it were to hold the moneys thus received through the merits of plaintiff's claim, it would unjustly enrich itself through the merits of plaintiff's claim. The Illinois Supreme Court in Peter v. Peter, 343 Ill. 493, 499, 175 N.E. 846, 849, 75 A.L.R. 890, seems to have such a situation in mind when it said: "The general rule that relief may not be had in equity against mistakes of law has by no means been invariably applied in this country nor in England. Where injustice would be done by its enforcement, such injustice has been avoided by declaring that a mistake such as to the title to property or the existence of a certain particular right, though caused by an erroneous idea as to the legal effect of a deed or of duties or obligations created by an agreement, was really a mistake of fact and not strictly one of law and so did not constitute an insuperable bar to relief. * * * The distinction between ignorance or mistake as to a general rule of law prescribing conduct and a mistake as to private rights or interests of a party to a written instrument has frequently been drawn. It has also been said that there is no established rule forbidding the giving of relief in any case to one injured by reason of a mistake of law, but that, whenever it is clearly shown that parties in their dealings with each other have acted under a common mistake of law and the party injured thereby can be relieved without doing injury to others, equity will afford him redress."

Again in the case of Warren v. Pfeil, 346 Ill. 344, 360, 178 N.E. 894, 900, the court said: "A fiduciary relationship is not limited to cases of trustee and *cestui que trust,* guardian and ward, attorney and client, and other recognized legal relationships, but extends to every possible case in which there is confidence reposed on one side and a resulting superiority and domination on the other. The origin of the confidence may be moral, social, domestic, or merely personal. If the confidence in fact exists and is reposed by one party and accepted by the other, the relation is fiduciary, and equity will regard dealings between the parties according to the rules which apply to such relation."

Again in People v. Central Mfg. Dist. Bank, 306 Ill.App. 15, 28 N.E.2d 154, 156, the court made this pronouncement: "A constructive trust may be defined as the device used by chancery to compel one who unfairly holds money or property to convey such money or property to another to whom it justly belongs. When a court of equity finds a defendant is holding money or property which it acquired by unjust, unconscionable or unlawful means, it will raise a trust and take such interest from the defendant and vest it in the wronged party. Any transaction may be the basis for creating a constructive trust where for any reason the defendant holds funds which in equity and good conscience should be possessed by the plaintiff. * * *"

The second defense, that of the Illinois statute of limitations, must fail because the trust fund was not created until it was collected by defendant railroad in 1938. Plaintiff's claim against defendant, prior to the latter's collection of this fund, may have been barred. We need not determine that question. However, after the defendant railroad had collected the fund and the circumstances surrounding its collection had impressed it with a trust in plaintiff's favor, plaintiff's right was revived or to express it more accurately, a newly created cause of action arose through the collection of the money by the defendant's railroad. The statute of limitations began to run only from said date, to-wit, 1938, on the new or revived claim arising out of defendant's collection of this money for plaintiff.

The decree is reversed, with directions to enter one in plaintiff's favor and in accordance with this opinion.

### On Rehearing.

The parties have stipulated as to the amount and division as follows:

It Is Hereby Stipulated And Agreed by Monon and Wabash, by their respective attorneys, that they will not take appeals from the aforesaid judgment, and by and between all the parties hereto, by their respective attorneys, that if the aforesaid judgment is reversed and Grand Trunk is held to be entitled to receive a share or portion of said sum of Fifty-five Thousand Seven Hundred Thirty-seven Dollars and Fifty-two Cents ($55,737.52), that then and in that event the judgment entered pursuant to such determination, shall order, adjudge and decree that of such sum of Fifty-five Thousand Seven Hundred Thirty-seven Dollars and Fifty-two Cents ($55,737.52) the sum of Thirty-seven Thousand Five Hundred Twenty-eight Dollars and Seven Cents ($37,528.07) shall be paid by Western Indiana to Grand Trunk, the sum of Thirteen Thousand Seven Hundred Twenty-two Dollars and Fifty-eight Cents ($13,722.58) shall be paid by Western Indiana to Monon and the sum of Four Thousand Four Hundred Eighty-six Dollars and Eighty-seven Cents ($4,486.87) shall be paid by Western Indiana to Wabash.

The last paragraph of the opinion is, therefore, amended to read as follows:

The decree is reversed with directions to enter one in plaintiff's favor and in accordance with the views expressed in this opinion and the aforesaid stipulation.