HURHAM REEVE et al., Appellants, *v.* JACOB STRAWN et al., Appellees.

APPEAL FROM MORGAN.

If S. agreed to loan R. a sum necessary to purchase land, and to take a deed to himself by way of mortgage, to secure the repayment of the money, and if S. buys the land with the money thus loaned; then a resulting trust will be created in the nature of a mortgage, and R. will have a right to redeem the land. But if S. paid his own money for the land, without a loan to R., no parol agreement between the parties, that R. should have the right to purchase the land, will entitle R. to a decree for the land, for the parol agreement will be cut off by the statute of frauds.

THE bill alleges, that the complainants being much embarrassed in their circumstances, by a decree of the circuit court of Morgan county, October, 1844, in two cases consolidated on the 17th of February, 1845, the master in chancery sold their lands, incumbered, to Strawn; that the bill in this case was

filed to redeem about 187 acres sold, for $862.48, (the precise amount of incumbrances on the same,) or at an average of $4.59 per acre; that H. Reeve, before day of sale, applied to Strawn for loan of money, to relieve the embarrassments of complainants; that, by arrangement, Strawn was to attend the sale and buy in the property, and was to hold it as security for his advances in money; that the complainant, Hurham Reeve, was to have time to redeem the lands, (no specified time alleged or proven,) was to occupy and cultivate the lands, and pay interest on Strawn's advances in shape of rent, in feeding contracts, which he, said complainant, paid up to year 1852; that complainants, on the 6th of October, 1840, gave their note to Jacob Huffaker for $354, at one day's date, with twelve per cent. interest, on which interest was paid up to 1842, (John Green was security on this note); that Green and Huffaker, as agents for the payee of the note, attended on the day of the sale of property, intending to bid for the property to indemnify themselves, and Strawn agreed with them to pay the note, (making some deduction in interest,) if they would not bid for the property; they did not bid, the note was assigned without recourse to Strawn, on the day of sale, and it has been taken up from him in part redemption of the lands; that complainant, H. Reeve, was participant in this arrangement between Strawn, Huffaker, and Green; that before, on, and after day of sale, Strawn gave out that he intended to bid, and did bid in the property for benefit of complainants, or complainant, Hurham Reeve; that, on the 17th of February, 1845, complainant, Hurham, and wife, and William C. Jones, (who had right to redeem the same,) for consideration of $359.20, made deed to Strawn for S. E. quarter of N. W. quarter of section 18; that the transactions in the premises amount to a mortgage, and that it is redeemable on reimbursement of balance of principal unpaid, and that interest has been paid for seven years; and that Strawn had admitted right to redeem several times since sale; that he was applied to for a written contract after the sale, but declined, saying that his word was as good as his bond; that complainant, Hurham Reeve, from date of sale, had been in possession of the lands, and paid rents, issues, and profits of the same, in lieu of interest on moneys advanced by him, until recently.

Bill charges that Strawn had admitted the right to redeem, but contended that complainants had not asserted the right in reasonable time.

Strawn pleaded the statute of frauds and perjuries, and an answer, that he bought the land and paid for it, procured title, and, with the consent of complainants, went into and enjoyed

quiet possession from that day, until he sold; that he paid all taxes, made valuable improvements on the land, and that complainants only had possession as his tenants; that his codefendants have possession of the land purchased of him, and have a good right thereto; and that the complainants have no right in the premises; that, immediately after the purchase, Hurham Reeve rented the land of Strawn, and remained thereon for several years, under contract to pay rent for the same; that Reeve made improvements, by contract with Strawn, and charged him for the same, and that Strawn has paid him for the same, and denies that Reeve had possession, except as a tenant; denies payment of rent as interest on the money. Strawn paid for the land; denies that Reeve ever paid one dollar of interest upon the purchase-money, or one dollar toward the purchase of said land, directly or indirectly; denies that Reeve had asserted any claim to the land until the filing of the bill, but for seven years peaceably and quietly acquiesced in, and submitted to, the right of Strawn to the land; denies all other matters in bill not covered by plea and answer.

General replication filed.

The cause was heard before WOODSON, Judge, at November term, 1852, of the Morgan Circuit Court, and a decree dismissing the bill was entered.

W. BROWN and D. A. SMITH, for appellants.

M. McCONNEL, for appellee.

CATON, J. At the time Strawn purchased the premises in controversy, there is little doubt that some sort of agreement existed between him and Hurham Reeve, by which the latter should be allowed to pay to the former the amount of the purchase-money and interest, and entitle himself to a conveyance of the land. Reeve insists, that Strawn agreed to loan him the funds necessary to purchase in the land, and to take a deed to himself, by way of mortgage, to secure its repayment, and that the money paid by Strawn for the land was the money thus loaned. The defendant insists, that there was no such loan contemplated or effected, but that he paid his own money for the land, which he bought in his own name, for his own use, and that whatever agreement there was between the parties, was a mere parol agreement for the sale of the land from Strawn to Reeve, after the former should have purchased it. There can be no serious controversy about the law in this case. If the facts are as insisted by the complainants, then a resulting

trust is created, in the nature of a mortgage, and there can be no doubt about the right of the complainants to redeem; but if, on the other hand, there was no loan of the purchase-money, and Strawn paid his own funds for the land, no parol agreement between the parties, that Strawn should purchase for the use and benefit of Reeve, or that Reeve should, at any time, have the right to purchase it, will entitle the complainants to the relief sought, for then it is nothing but a simple parol agreement for the sale of land, which is at once cut off by the plea of the statute of frauds, which has been interposed. The serious question in the case, then, is one of fact. The evidence upon this point is voluminous, and consists principally of proof of declarations of the parties at and subsequent to the time of the purchase, and of their treatment of, and relative position towards, the property after Strawn acquired the title. Strawn purchased the land in his own name, and paid for it. Upon this, the presumption arises that he purchased with his own money. This presumption is sought to be rebutted, by proof of his declarations made at the sale to several witnesses, and by what he said to Mrs. Henderson and others subsequently. Many of these declarations, if taken in a technical sense, would seem to indicate a loan of the purchase-money to Reeve, and that he took the deed in his own name as a security.

Mr. Green, one of the complainants' witnesses, who does not appear to have been cross-examined, testified, that at the sale Strawn told the witness that he had made an arrangement with the complainants by which they were to redeem the lands, but the particulars of the arrangement he did not state. Upon repeated occasions subsequently, Strawn told the witness that the purchase was a redeemable one, and that he had made the purchase in order to assist the complainants to pay their debts. He said that Strawn was to buy the lands, and hold them as security for the money advanced by him for the plaintiffs, who were to cultivate the land, and render to Strawn one third of the products for the use of the money advanced. There were some other details to the arrangement, to which it is unnecessary now to allude. The witness attended the sale for the purpose of bidding on the property, so as to secure a debt owing from the complainants to Huffaker, in which the witness was security; but he refrained from bidding, in consequence of an arrangement made with Strawn that he should pay the debt, which he subsequently did, and promised to cancel it. Other witnesses testify to somewhat similar statements made by Strawn at the time of the sale; but none state the case so strongly as Green. As before remarked, this testimony, when taken alone, may be

understood to imply a loan of the purchase-money, but not necessarily; and it should be remarked, that the witness does not pretend to repeat the words of Strawn, and even if he did, there can be no pretence that Strawn spoke of the complainants' right to redeem, or used, any other particular expressions in their exact sense. Strawn was not a lawyer, and the expressions attributed to him would be as likely to be used to convey the idea that Strawn had agreed to purchase the land and let the complainants have it for the amount which he paid, and interest. According to the understanding of an ordinary business man, this might be a redemption of the land by the complainants, and thus a security for the money which Strawn had paid, when, in fact and in law, the agreement was for a purchase of the land at the price which Strawn had paid. It must· be remembered, that conversations and declarations testified to in this way, after a considerable lapse of time, are not the most reliable evidence to enable us to determine what was the true character of the arrangement between the parties, especially where the distinguishing features between a loan, as claimed, and an absolute purchase, may not be very readily perceived by every one. At least, they cannot be of controlling influence under such circumstances. But in addition to this, is the testimony of Mrs. Henderson. In speaking of a conversation which she had with the defendant, some years before, she says, " I asked him if he had bought Mr. Reeve's farm, and he said, ' yes, he owned it; he held a mortgage on it, and Mr. Reeve never would be able to redeem it.' " While this might seem to imply a loan of the purchase-money, and that he had taken the title to himself to secure the money loaned, the same remark is applicable to this, which was made in relation to the evidence of the other declarations. If we apply to each portion of the declarations sworn to by this witness a strict legal meaning, we find an irreconcilable· contradiction. At the same time that he said that he held a mortgage on the land, he also said that he had bought it and owned it. This all may be true in the sense intended by Strawn, and still he may have referred to an agreement which he had made with the Reeves, that they might have the land by paying him the purchase-money and interest. In this, as in all other cases, we must consider all of the testimony together; the facts and circumstances proved, as well as the declarations of the party. In our apprehension, the subsequent relations of the parties, and the manner in which they respectively treated this land, are utterly irreconcilable with the idea that the land was purchased for, and in equity belonged to the complainants. It appears that one of the complainants, Hurham Reeve, continued

Reeve et al. *v.* Strawn et al.

in possession of the land, and to cultivate it, as the tenant of Strawn, under leases from year to year. Three of these leases are in this record, and it is testified, by one of the complainants' witnesses, that the rent reserved was a high rent. Some of the provisions of these leases are worthy of attention, as they indicate clearly the views which the parties themselves entertained of the real ownership of the land. In the lease which is proved by Stacy, Reeve agrees "to keep every thing off of the clover field all the time, and pull all the burrs out of all the land that is in clover, before they get ripe, and destroy nothing on the farm, nor cut any green timber for any thing, and give peaceable possession by the 1st of March next. This 5th day of March, 1849." These terms certainly indicate, that the lessor was something more than a mortgagee, and the tenant something less than the equitable owner of the premises. The strict regard for the judicious management of the farm indicates the highest interest in its ultimate value, and implies a very strong doubt that the lessee would, without such provision, treat the farm with the indifference of a mere tenant with but a temporary interest, rather than with that care and regard which a permanent interest in the estate might be supposed to excite. Similar provisions are found in the lease dated the 5th of March, 1850, which also binds the tenant to make certain permanent improvements, for which Strawn was to find the materials. Each of the leases created strictly a tenancy for a single year, with an explicit provision, that at the end of the year the possession should be surrendered to Strawn. The testimony shows that other permanent improvements were made on the premises by the tenant, for which he was paid by Strawn. Here both parties have certainly treated Strawn as the real owner; it may be with a verbal agreement for the sale of the land to the tenant, but that had existed for several years, and with a very remote probability, that the complainants would be able to perform it. Indeed, all the circumstances connected with this tenancy and the treatment of the estate by the parties, would seem to indicate that they all considered even that parol agreement as practically at an end. Is it to be believed that Reeve would ask, or that Strawn would grant, that the latter should pay the former for permanent improvements made upon the estate belonging to the former, and in which the latter had but a mortgage interest, while the premises were manifestly, in any event, more than sufficient to pay the amount said to have been secured? If we are to draw reasonable deductions from facts proved or admitted, we must say, that both parties considered the property as belonging to Strawn, and that they supposed in all probability he would continue to be the owner.

It may be here remarked in reference to the alleged loan of the purchase-money by Strawn to the complainants, that no person ever heard him agree to make such a loan, or heard the parties treat or negotiate for any loan of money. Nor in all of the testimony in this case, from the beginning to the end, is there one word said in reference to a loan of money, nor does such an expression once occur in the testimony. Before we transfer the title to real estate upon the strength of parol testimony alone, the facts upon which such change is asked should be so convincing as to leave no reasonable doubt in the mind of the court, and not, as in this case, consist of ambiguous expressions and uncertain declarations made by the party sought to be charged, and testified to by witnesses after the lapse of several years. In the case of Furguson. *v.* Sutphur, 3 Gilman, 447, so much relied upon at the bar, the loan of the purchase-money was so conclusively proved that no room for doubt was left; but it was insisted that it was not competent to prove it by parol, even where the whole transaction was manifestly for the purpose of covering up an usurious loan. There the whole history of the negotiation was spread out before the court by such convincing proofs that nothing was left for inference. In the case of Coates *v.* Woodworth, 13 Illinois, 654, it is true, that the entire negotiation between the parties was not shown, but enough was shown to establish satisfactorily that a loan had in fact been negotiated at a usurious interest. The parties had been in actual negotiation for a loan, and no negotiation ever took place between the grantor and the grantee, but Woodworth, who claimed to be the *cestui que trust*, negotiated alone with the grantor. That case was only sustained, upon the ground that the land was purchased with the money of Woodworth, and the deed given to Coates as a security for the money loaned. The court in that case said, "No agreement between Coates and Woodworth, that Coates should buy the land and then sell it to Woodworth upon any terms, will support the bill; nor will a subsequent agreement by Coates to let Woodworth have the land upon any terms sustain the case, if Coates in fact purchased the land with his own money from Tarbox."

In the case before us, the evidence points very clearly to the conclusion that there was no agreement for a loan of money, and that Strawn purchased the land with his own funds, agreeing by parol, no doubt, that he would let the complainants have it for the same price which he paid, and interest. This was an agreement by parol to sell Strawn's land to them, and not for them to redeem the land from an incum-

brance which Strawn had upon it. At any rate, it certainly fails to establish satisfactorily, that there was a loan of the purchase-money by Strawn, and that he purchased with their funds, instead of his own, and for their use, and not for himself.

Of this opinion was the circuit court, and we think the decree should be affirmed.

*Decree affirmed.*