CHARLES M. LARMON *et al.*

*v.*

SUSAN C. KNIGHT *et al.*

*Filed at Ottawa January 18, 1892.*

1.  TRUSTEE—*of special trust by construction of law.* A wife, after the sale of her real estate under a decree, and the expiration of the time of redemption, obtained from the purchaser a contract for the sale of the certificate of purchase on the payment of a sum of money by a day named. Laboring under sickness, and in fact upon her death-bed, her husband repeatedly urged her to transfer her rights to him, promising that he would make the payment and save the property for her children, and thereby induced her to transfer the title to him. He obtained a loan on the property and paid the sum required to perfect the title in him, using some of the wife's means: *Held,* that the law would hold him as trustee of the property, for the use of his wife's children. Such case is different from one where a party voluntarily conveys property to another upon a parol trust.

2.  STATUTE OF FRAUDS—*express trust—trust by construction of law.* An express trust created by parol is within the Statute of Frauds, and void; but where the trust exists by construction of law, by reason of the circumstances and the fraudulent conduct of the alleged trustee, whereby he obtained the title to land, the Statute of Frauds will have no application.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. W. W. GURLEY, for the appellants:

Properly speaking, constructive trusts are such as are raised by equity in respect to property which has been acquired by fraud, or when, though acquired originally without fraud, it is against equity that it should be retained by him who holds the legal title. *Wright* v. *Gay,* 101 Ill. 241; 2 Washburn on Real Prop. (4th ed.) 482.

The neglect of a person to whom conveyance was made at his own express request, to perform his promise to make a certain disposition of the property, raises a trust by implica-

tion, which will be enforced although resting entirely in parol. *Barrett* v. *Hanrick,* 42 Ala. 60; *Hodge* v. *Hodge,* 1 Watts, 163; *Socher's Appeal,* 104 Pa. St. 609; *Allen* v. *Jackson,* 122 Ill. 567; *Reed* v. *Peterson,* 91 id. 288; *Brophy* v. *Lawler,* 107 id. 284; *Fischbeck* v. *Gross,* 112 id. 208; *Henschel* v. *Mamero,* 120 id. 662.

Mr. GEORGE L. PADDOCK, for the appellees:

Under the answer setting up the Statute of Frauds it was not competent to show the alleged trust by parol. *Lantry* v. *Lantry,* 51 Ill. 458.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This is a contest between children of a common father but of different mothers, in regard to the title to certain real estate in the city of Chicago. Philip Larmon was twice married. The defendants are the children of his first and the complainants of his last marriage. His last wife, Louisa Larmon, the mother of the complainants, owned the property in controversy in her own right, free from the control of her husband, and her title thereto was established by decree of court, in a suit to which he was a party,—and that, too, largely upon his testimony. Subsequently, the property was sold under a decree of a competent court, and bought by another person, and she failed to redeem within the time provided by law for making redemption; but she then made an agreement with such purchaser, whereby he sold the certificate of purchase to her for a consideration named, to be paid within a stipulated time. After the making of this agreement, and before the expiration of the time within which she was allowed to make payment, she executed a deed of the property, and assigned the certificate of purchase to her husband, Philip Larmon. The deed and assignment of the certificate of purchase purported to be absolute and without any conditions. Soon after executing this deed and assignment she died. After her death

Philip Larmon effected a loan of $30,000 on the property, and with the proceeds of this loan, and $7636 of money belonging to her estate, he paid the amount due upon her agreement with the purchaser of the property, and obtained a deed of it to himself. Philip Larmon subsequently died intestate, leaving the mortgage upon the property unpaid, and without having made any transfer of the title to the property. The complainants allege that Philip Larmon held the title to the property as trustee for them, as heirs-at-law of Louisa Larmon, deceased. The defendants deny the trust, and plead the Statute of Frauds. The court, on hearing, decreed that the bill be dismissed.

The ruling of the court below was upon the assumption that the trust, if proven, was an express trust, and therefore obnoxious to the Statute of Frauds, and upon that assumption the ruling was unquestionably correct, for the proof of the trust is oral, only. But we can not concur in the view that the case presented is that of an express trust. The evidence is, that Philip Larmon made repeated requests that his wife, Louisa, should place her title in him, and that she peremptorily refused to do so, until, being upon her death-bed, and being sensible that she would be unable to make the payment required by her contract with the purchaser of her property, and realizing that her children would be without other means, and that, one of them being a minor, it would be difficult, if not impossible, for them to raise the money after her death wherewith to comply with her contract, she finally yielded to the persistent request of Philip Larmon to transfer the property to him, to enable him to redeem it and hold it for her children, and accordingly transferred the property to him for that purpose.

Nelson Monroe, the attorney for Louisa, among other things testified: "I said to her (*i. e.*, Louisa Larmon,) this: that if she would make the conveyance, Mr. Larmon assured me he would take the title and would manage it,—take up this,

make a loan, redeem from this certificate, and save the property for her children. She had repeated several times that she had held the property because she had seen so much trouble, and property frittered away, that she wanted to hold it so that it could not be taken away from her children—she wanted to save it for them. She said something about that time,—at that part of the conversation,—if I would have Mr. Larmon make a will as soon as might be, so that her children—for the benefit of her children—so that her children would get it. I told her I would endeavor to do so—to have him make such a will. There was no more said then that is necessary to tell. We were there quite a while in the room, but that was the substance of it; and when I assured her that if she made the conveyance, signed and executed the deed to Mr. Larmon, it would have the effect to save the property for her children, and that if she did not do it the property might be lost, she thereupon executed the deed." And again he testified: "On the third day of May Mr. Larmon came to my office and told me that if Mrs. Larmon died it would leave the property in bad shape. She had worked all these years to save the property, and he wanted me to go down and tell her to convey to him,—let him manage it for the benefit of her children. I went down and made that statement to Mrs. Larmon. I told Mr. Larmon I would go down and have her make the conveyance, so as to save the property."

It is not claimed that this testimony is contradicted. There is no offer to prove that there was any consideration paid by Larmon to his wife as the consideration for which she put the property in his hands. Aside from the testimony of Monroe, there is enough in the record to raise the presumption that the transaction was without any valuable consideration passing from him to her. By the necessities of her situation Mrs. Larmon was compelled to put the control of her property in some one who could speedily raise money upon it wherewith to meet her engagement, in order to regain title to it, and

her husband, by his representations that he would do this and save the property for her children, induced her to not put it in the hands of others, but in his hands.    But for that representation he could not have obtained her title.    He undertook to do for her what she was unable, by reason of her fatal sickness, to do for herself, and what she was induced to believe that her children, by reason of the minority of one, could not do after her death.

It is said in Hill on Trustees (4th Am. ed. p. 234): "Where a person by means of his promises, or otherwise by his general conduct, prevents the execution of a deed or will in favor of a third party with a view to his own benefit, that is clearly within the first head of frauds, as distinguished by Lord HARD-WICKE, viz., that arising from facts or circumstances of imposition; and the person so acting will be decreed to be a trustee for the injured party, to the extent of the interest of which he has been thus defrauded."    Among other illustrations the author, on the same page, gives the following: "And in another case, where the wife of a copyholder prevented her husband from vesting the copyhold in his son after his death, by promising, herself, to make it over to him if he appointed her his successor instead of the son, she was decreed to be a trustee for the son, notwithstanding the Statute of Frauds, on the ground of fraud."    It would seem to be equally within the principle for a person, by means of his promises, to induce a party not to let real estate descend as it would otherwise have been left by him to descend, for the injury, in the case mentioned, to the legatee or grantee, can not be different or greater than is the injury to the heir, if he is, by like means, deprived of what would otherwise have been his inheritance. And the rule is thus stated in 2 Pomeroy's Equity Jurisprudence, sec. 1055: "A second well settled and even common form of trusts *ex maleficio* occurs whenever a person acquires the legal title to land or other property by means of an intentionally false and fraudulent verbal promise to hold the same

for a certain specified purpose,—as, for example, a promise to convey the land to a designated individual, or to reconvey it to the grantor, and the like,—and having thus fraudulently obtained the title, he retains, uses and claims the property as absolutely his own, so the whole transaction by means of which the ownership is obtained is in fact a scheme of actual deceit." See, to like effect, 1 Leading Cases in Equity, (White & Tudor,) 4th Am. ed. pt. 1, p. 352, and cases cited in note. The editors there say, that where the conveyance is gratuitous,—where one obtains a gift of property on the faith of a parol assurance that he will dispose of it, either wholly or in part, in a particular way,—equity will enforce performance of the agreement.

It was not indispensable, here, to prove that the husband, when he had the wife's title put in his name, told any body that he did not intend to keep his promise. That may be inferred from the circumstance that he did not comply with his promise, although there was nothing intervening to prevent it. He is presumed to have intended to do, when he obtained the property, what he finally did do.

In our opinion the parol evidence was admissible notwithstanding the plea of the Statute of Frauds, and it established a trust *ex maleficio* in Philip Larmon. (*Williams et al.* v. *Freeland et al.* 29 N. J. 417; *Brison* v. *Brison*, 75 Cal. 529; *Wood* v. *Rabe*, 96 N. Y. 426.) Those claiming as his heirs succeed him as such trustee. Perry on Trusts, sec. 171.

The decree is reversed and the cause is remanded to the circuit court of Cook county, with direction to that court to enter a decree in conformity with the prayer of the bill.

*Decree reversed.*