LEMONT RYDER *et al.* Appellees, *vs.* NELLIE V. RYDER, Appellant.

*Opinion filed February 16, 1910—Rehearing denied April 6, 1910.*

1. TRUSTS—*an express trust must be evidenced in writing.* If a deed absolute in form is made upon the grantee's verbal promise to hold the title in trust for others, and there was no fraud practiced upon the grantor to induce him to make the conveyance, the trust is an express one, which cannot be enforced as against a plea of the Statute of Frauds.

2. SAME—*fact that alleged trustee refuses to execute express trust does not take it out of the statute.* The fact that the alleged trustee refuses to execute an express trust or denies its existence does not constitute such fraud as takes the trust out of the operation of the Statute of Frauds.

3. SAME—*to raise a trust ex maleficio there must be positive fraud.* To raise a trust *ex maleficio* there must be an element of positive fraud in the transaction as distinguished from a mere refusal of the alleged trustee to execute an express trust or a denial of its existence.

4. SAME—*grantor's declarations are not admissible to impeach grantee's title.* Declarations by the grantor, out of the presence of the grantee, to the effect that the deed, though absolute in form, was in fact upon trust for the benefit of others after the grantee's death, are not admissible to impeach the grantee's title.

5. SAME—*what evidence fails to establish a trust ex maleficio.* Alleged statements by the grantee, in a deed absolute in form, to the effect that she was only to have the use of the land for life and that at her death it was to go to the children of her husband by a former wife, which statements are, in the main, denied by her, do not meet the requirement of the law that a trust *ex maleficio* must be established by clear and unequivocal evidence.

6. DEEDS—*marriage is good consideration for a deed.* Parties who are competent and have full knowledge of all the material facts may agree that their marriage shall be upon consideration of the conveyance of land, and such conveyance, when followed by marriage as contemplated, is based upon valuable consideration.

APPEAL from the Circuit Court of McHenry county; the Hon. ROBERT W. WRIGHT, Judge, presiding.

JOHN B. LYON, and D. T. SMILEY, for appellant.

JOSLYN & FRANCIS, (SHURTLEFF & HEIZER, of counsel,) for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

It appears from the record that on the 18th day of March, 1890, George D. Ryder was the owner in fee of a farm containing about one hundred and twenty-five acres, situated in the county of McHenry, which at that time was worth in the neighborhood of $40 an acre; that he was then about sixty-three years of age and was a widower, he having been prior to that time married twice; that he had no children by his second marriage but had three children by his first marriage, namely, Lemont Ryder, Adelia Vincellette and Jeanette Paynter, all of whom at that time were married and had homes of their own; that for more than a year prior to March 18, 1890, said George D. Ryder had been keeping company with Nellie Vaughan, a maiden lady, who, as we understand the evidence, was then about forty-three years of age and who resided with her step-father and mother, and with whom George D. Ryder had been acquainted since she was quite a small girl; that some time prior to March 18, 1890, said George D. Ryder proposed marriage to said Nellie Vaughan; that she advised with her step-father, who was a minister of the gospel, with reference to the proposal of marriage made to her by George D. Ryder, and he stated to her that as George D. Ryder was much older than she was and was not in good health he would not advise her to accept the proposal of marriage made to her by him unless he would in some way make provision for her future comfort and support by the settlement of some property upon her; that she informed George D. Ryder of her conference with her step-father

and he said he would make a will and give to her his farm, to which she replied a will might be broken or set aside and that she did not think that would be a proper way to arrange the matter; that George D. Ryder then proposed to her if she would marry him he would deed to her his farm, which proposition she accepted; that the farm was then encumbered to the extent of $700 by a mortgage, which he agreed to pay off and satisfy prior to their marriage, so that she would receive a deed to the farm free and clear of all encumbrances; that George D. Ryder thereupon went to Elgin, Kane county, and sold a piece of real estate which he had in that county and paid off said mortgage, and called upon an attorney in Elgin who had been doing business for him for a number of years and said to him that he was about to marry Nellie Vaughan, and directed him to prepare a warranty deed conveying from him to her his farm; that the attorney thereupon prepared a warranty deed bearing date March 18, 1890, conveying said farm from George D. Ryder to Nellie Vaughan in fee simple and without any limitations, and George D. Ryder signed and acknowledged the deed before said attorney as a notary public and took it away with him; that on the 18th day of March, 1890, being the day the deed was signed and acknowledged, George D. Ryder wrote and mailed to Nellie Vaughan the following letter, which she received about that date:

"*Dear Nellie*—The place is sold and possession will be given first of April. The mortgage will be all cleared up on the farm. I have made out a warranty deed to you of my farm and you can now answer my question by setting the day for our marriage. Please make it soon as possible and then we can tell what is the next best thing to do. When you say when I can come I will get the deed recorded in the recorder's office in Woodstock, McHenry county, State of Illinois, and bring the deed with me and place it in your hand before we are united together as man and wife.

"I remain yours forever,                   GEO. D. RYDER.

"Our God has worked this out for us. Praise His most holy name."

It further appears that on the 14th day of May, 1890, George D. Ryder went to the home of the parents of Nellie Vaughan, and after she was dressed to start to Geneva, where their marriage was to be celebrated, and just before they left her parents' home, he took from his pocket the deed for the farm which he had had prepared in Elgin on March 18, 1890, and gave it to Nellie Vaughan; that after George D. Ryder and Nellie Vaughan were married the deed was recorded, and shortly thereafter they moved upon the farm, where they lived and carried on the farm for seven or eight years, after which they moved to Harvard, where they resided at the time of George D. Ryder's death, which occurred on the 11th day of July, 1904; that subsequent to the death of George D. Ryder, and on the 8th day of May, 1905, the son and daughters of George D. Ryder filed the original bill in this case against Nellie Ryder, by which they sought to have said deed bearing date March 18, 1890, set aside on the ground that its execution was obtained by the fraud and undue influence of Nellie Vaughan, and on the ground that it was without consideration, and on the ground that said George D. Ryder was of unsound mind at the time he executed the same, and prayed, in the alternative, if it was held the deed was not absolutely null and void, that it be held that it was intended by the parties only to convey a life estate in said farm to said Nellie Vaughan, now Nellie Ryder. Answers and replications were filed, and Nellie Ryder filed a cross-bill to set aside as a cloud upon her title a certain affidavit which the complainant Lemont Ryder had filed in the recorder's office of McHenry county, wherein he had stated that he and his sisters were the owners of said farm in fee, subject to the life estate therein of Nellie Ryder. Answers and replications were filed to the cross-bill, and the case was referred to a special master in chancery to take the proofs and report his conclusions, whereupon said special master took the proofs and prepared and filed the follow-

ing report, after he had overruled objections thereto, which objections were renewed as exceptions to said report in the circuit court:

"FINDINGS OF FACT.

"*First*—I find that George D. Ryder executed a warranty deed conveying the premises described in complainants' bill of complaint to Nellie Vaughan, (now Nellie V. Ryder,) the defendant herein, on the 18th day of March, A. D. 1890. (Complainants' Ex. 'D.')

"*Second*—I find that George D. Ryder and Nellie Vaughan (the defendant herein) were united in marriage at Wheaton, Illinois, on the 14th day of May, A. D. 1890, and that said George D. Ryder delivered said deed to the premises aforesaid to the defendant herein immediately prior to said marriage; that said deed was filed for record in the recorder's office of McHenry county, Illinois, on June 1, 1891, and recorded in book 85 of deeds, page 549.

"*Third*—I find that the consideration for said deed was the marriage of the defendant to the said George D. Ryder.

"*Fourth*—I find that the said George D. Ryder, on said 18th day of March, 1890, at the time he executed said deed conveying the premises described in the complainants' bill of complaint to Nellie Vaughan, (now Nellie V. Ryder,) was of sound mind and memory, and was at all times prior and subsequent thereto capable of understanding the scope and nature of the business transactions in which he was engaged. I further find that the said deed was executed by the said George D. Ryder of his own volition and as his free and voluntary act; that the defendant was not present when said deed was drafted and executed, and that the said George D. Ryder was in no way induced or compelled by fraud, misrepresentation or undue influence of the defendant to execute said deed, and that no fraud, misrepresentation or undue influence was connected with such execution or was operating on the said George D. Ryder at said time, but that said conveyance was executed and deliv-

ered to the said Nellie Vaughan (now Nellie V. Ryder) in pursuance of an agreement of marriage between the parties thereto. (Defendant's Ex. 'C.')

"*Fifth*—I further find that the said George D. Ryder understood and intended by said deed to convey the title in fee simple to the premises therein described to Nellie Vaughan, (now Nellie V. Ryder,) and that the scrivener prepared said deed in accordance with his wishes and instructions.

"*Sixth*—I further find that the said George D. Ryder departed this life intestate on the 11th day of July, A. D. 1904, leaving Nellie V. Ryder, his widow, and Lemont Ryder, Adelia Vincellette and Jeanette Paynter, his children by a former wife, as his only heirs-at-law.

"*Seventh*—I further find that the affidavit dated August 7, 1904, and known as No. 20,746, filed by Lemont Ryder in the recorder's office of McHenry county, Illinois, on August 17, 1904, and recorded in book 114 of deeds, page 187, is a cloud on the title to the premises described in complainants' bill of complaint.

"*Eighth*—I further find that the said Lemont Ryder, in filing said affidavit, was not actuated by malicious motives, but, on the contrary, was acting under an honest motive and believed that he and his two sisters were the owners of the fee to the premises in question. And I further find that such belief was induced and justified by the repeated statements of George D. Ryder and Nellie V. Ryder, that she, the said Nellie V. Ryder, had only a life interest in said premises, and that said Lemont Ryder had consulted and was acting under the advice of an attorney.

### CONCLUSIONS OF LAW.

"*First*—I find that the complainants herein have failed to prove any of the material allegations contained in their bill of complaint.

"*Second*—I find that Nellie Vaughan, (now Nellie V. Ryder,) the defendant herein, is now, and since the 14th day of May, A. D. 1890, has been, the owner in fee simple of the premises described in the complainants' bill of complaint.

"*Third*—I find that the affidavit made by Lemont Ryder, dated August 7, 1904, and filed for record in the recorder's office of McHenry county, Illinois, and recorded in book 114 of deeds, page 187, and known as No. 20,746, should be canceled, annulled and discharged of record.

"*Fourth*—I find that the cross-complainant, Nellie V. Ryder, is not entitled to recover any damages by reason of the filing of said affidavit by Lemont Ryder.

"I would recommend that the court by its decree find that Nellie Vaughan, (now Nellie V. Ryder,) the defendant herein, is the owner in fee simple of the premises described in the complainants' bill of complaint, and that the court by its decree should cancel, annul and discharge of record the said affidavit of Lemont Ryder, and that the court by its decree should debar and estop the complainants herein from ever claiming or asserting any right, title or interest in and to the premises described in complainants' bill of complaint, or any portion thereof, as the heirs-at-law of George D. Ryder, deceased."

After the exceptions had been filed to the master's report the complainants asked leave to amend their bill, and upon leave granted they filed a new bill, in which they prayed that the court would hold that said Nellie Ryder held the title to said farm in trust for herself during her natural life, and that she held the fee in trust for the benefit of Lemont Ryder, Adelia Vincellette and Jeanette Paynter, and that said Lemont Ryder, Adelia Vincellette and Jeanette Paynter were the owners in fee of said farm, subject to the life estate therein of Nellie Ryder, to which amended bill an answer was filed and a replication to the answer, and the cause, on the application of the complain-

ants, was re-referred to the special master to take further evidence and report his conclusions, with leave to the parties to introduce such portions of the evidence taken on the former reference before the master, on the re-reference, as they might deem proper. Further testimony was taken and a further hearing was had before the master, and he filed a new report after objections had been overruled thereto, which objections were renewed as exceptions in the circuit court, which report is as follows:

"FINDINGS OF FACT.

"*First*—I find that George D. Ryder executed a warranty deed conveying the premises described in complainants' bill of complaint to Nellie Vaughan, (now Nellie V. Ryder,) the defendant herein, on the 18th day of March, A. D. 1890, and that said deed, although absolute in form, was intended, by agreement of the parties thereto, 'to convey only a life estate to the grantee, with remainder to the complainants.

"*Second*—I find that George D. Ryder and Nellie Vaughan were united in marriage at Geneva, Illinois, on the 14th day of May, A. D. 1890, and that the said George D. Ryder delivered said deed to the premises aforesaid to the defendant immediately prior to said marriage; that said deed was filed for record in the recorder's office of McHenry county, Illinois, on June 1, 1891, and recorded in book 85 of deeds, on page 549.

"*Third*—I find that the consideration for said deed was the marriage of the defendant to the said George D. Ryder and the verbal promise of the defendant to convey said premises to the complainants after the enjoyment of a life estate therein.

"*Fourth*—I find that at the time said deed was executed an engagement of marriage existed between said George D. Ryder and the defendant; that he reposed great trust and confidence in defendant's honesty and integrity, and

believed at that time, and ever afterwards until his death continued to believe, that the defendant would fulfill her promise to convey the premises in question to the complainants after the enjoyment of a life estate.

"*Fifth*—I find that the defendant, Nellie V. Ryder, never claimed to be the owner of the fee to the premises in controversy until some time after the death of George D. Ryder, but, on the contrary, repeatedly stated before and until some time after the death of George D. Ryder that she had only a life interest therein.

"*Sixth*—I find that George D. Ryder departed this life, intestate, on the 11th day of July, A. D. 1904, leaving Nellie V. Ryder, the defendant, his widow, and the complainants, Lemont Ryder, Adelia Vincellette and Jeanette Paynter, his children by a former wife, as his only heirs-at-law.

CONCLUSIONS OF LAW.

"*First*—I am of the opinion that the complainants have proved the material allegations contained in their bill of complaint.

"*Second*—I am of the opinion that the defendant obtained the legal title to the premises in question from George D. Ryder by reason of the relation of trust and confidence existing between them at the time of the execution of said deed and upon her promise to hold the legal title in trust for the complainants, and that thereby she obtained an advantage which she otherwise would not have obtained, and by means which, in my opinion, were constructively fraudulent and which in equity and good conscience she ought not to retain.

"*Third*—I am of the opinion that the court by its decree should find that a trust by construction arose out of the circumstances and relations existing between the parties to said deed at the time of the execution thereof, and that the court by its decree should further find that the defend-

244—20

ant holds the legal title to said premises in trust for com-
plainants, subject to the enjoyment of a life estate therein."

Thereupon the court approved and confirmed the mas-
ter's last report and entered a decree in accordance with
the recommendations of the master, whereby it was held
that Nellie Ryder had a life estate in said farm and the
complainants were the owners of the fee to said farm, and
so decreed, from which decree the said Nellie Ryder has
prosecuted an appeal to this court.

The amended bill, the last report of the master and
the decree of the circuit court proceed upon and are based
upon the theory that a confidential relation existed between
George D. Ryder and Nellie Vaughan (now Nellie Ryder)
at the time the deed bearing date March 18, 1890, was exe-
cuted and delivered, and that at that time Nellie Vaughan
agreed with George D. Ryder that she would accept the
legal title to said farm and hold the same as a trustee for
her own use during her life and in fee for the use of the
three children of George D. Ryder, namely, Lemont Ry-
der, Adelia Vincellette and Jeanette Paynter, and that it
would be a fraud upon the complainants to permit her to
repudiate said trust and hold said farm in fee, and that by
reason of the relation of the parties and the refusal to rec-
ognize the complainants as the owners of the farm in fee,
under the authority of such cases as *Larmon* v. *Knight,*
140 Ill. 232, *White* v. *Ross,* 160 id. 56, *Pope* v. *Dapray,*
176 id. 478, *Stahl* v. *Stahl,* 214 id. 131, and *Hilt* v. *Simp-
son,* 230 id. 170, a court of equity, in order to administer
complete justice between the parties, would raise up a con-
structive trust or a trust *ex maleficio,* and impress it upon
the farm in the hands of Nellie Ryder in favor of the com-
plainants; while the theory of the defense is that the trust
attempted to be established by the complainants is an ex-
press trust, and as it is not evidenced in writing it is with-
in the Statute of Frauds and void, and that the evidence
fails to establish any confidential relation, within the mean-

ing of the law, existing between George D. Ryder and Nellie Vaughan at the time the deed was executed and delivered, or any fraud practiced upon George D. Ryder by Nellie Vaughan at the time the deed was executed and delivered, upon which a court of chancery can, by construction, raise up a constructive trust or a trust *ex maleficio* and impress it upon the farm in the hands of Nellie Ryder in favor of the complainants.

Section 9 of the Statute of Frauds was pleaded, which reads as follows: "All declarations or creations of trusts or confidences of any lands, tenements or hereditaments, shall be manifested and proved by some writing signed by the party who is by law enabled to declare such trust, or by his last will in writing; or else they shall be utterly void and of no effect: *Provided,* that resulting trust or trusts created by construction, implication or operation of law, need not be in writing, and the same may be proved by parol." (2 Starr & Cur. Stat.—2d ed.—p. 2021.)

The evidence found in this record is uncontradicted that George D. Ryder agreed with Nellie Vaughan, prior to March 18, 1890, that in consideration that she would marry him he would convey to her said farm; that he went to the city of Elgin, to his own attorney, alone, and had a warranty deed prepared conveying said farm to Nellie Vaughan absolutely, and signed it and acknowledged the same and carried it away with him, and that he then wrote the letter to Nellie Vaughan hereinbefore set forth; that he kept the deed in his possession until the 14th day of May, 1890, when he carried it to the home of the parents of Nellie Vaughan and delivered it to her prior to their marriage and she afterward had it recorded, and the record, up to that point of time, does not contain a scintilla of evidence that the transaction was different from what it purports upon its face to be,—that is, an absolute conveyance of the farm to Nellie Vaughan. The attorney who drew the deed, Mr. Ezra Rue, testified that George

D. Ryder came to his office in Elgin alone and directed him to draw a deed to the farm to Nellie Vaughan, without any limitations whatever. He said: "I reside in Elgin, Kane county, Illinois., I am in the law business and real estate dealer. Have resided in Elgin thirty-five years. I am a regularly licensed attorney at law. Admitted to the bar in the fall of 1876. Have been engaged in the practice of law since that time. I was acquainted with George D. Ryder in his lifetime. I think I became acquainted with him as early as about the time I was admitted to practice law. I transacted business for him after that time. It was concerning property there in Elgin—the renting and collecting of rents on real estate. To the best of my recollection I did that for six or seven years prior to March, 1890. The paper shown me, marked 'Complainants' Exhibit D,' is in my handwriting. I drafted the deed. The certificate of acknowledgment on the back is in my handwriting also. I remember the occasion of the drafting of this deed. George D. Ryder was present. We had two rooms, and doubtless I drafted the deed in the second room with him. My best recollection is that Mr. Ryder was alone with me in the room at the time that deed was drafted. Mr. Ryder directed me to draft it. He said he was going to give it to what was to be his future wife; that he was going to give the property to her. He said she was going to marry him and he was going to give her that farm. I talked to him. In a general way I can state what was said. The substance was, that he thought he was going to get a pretty good wife,—a wife that would be good to him and take care of him; in short, that he was making a good bargain; that his future wife was a very estimable lady and he was going to give her the farm. That is the substance of it as I recollect it now. I saw George D. Ryder at different times after that. I can't remember any special time. There was not anything said at this particular time of drafting the deed, or immediately

prior to drafting the deed, or immediately after, by George D. Ryder to me, concerning any reservations or anything of that kind connected with the making of the deed or the farm or the property." And Nellie Ryder testified that the understanding between herself and George D. Ryder, at the time the deed was made and delivered, was that she was to have an absolute deed to the farm, and that there was no understanding between her and George D. Ryder that she was to hold the farm for her life and that she was to hold the fee in trust for the complainants. This testimony, if true,—and it is uncontradicted,—clearly establishes that George D. Ryder conveyed the farm absolutely to Nellie Vaughan, now Nellie Ryder.

If, however, it were conceded that it was agreed between George D. Ryder and Nellie Vaughan, (now Nellie Ryder,) at the time the deed was executed and delivered, that Nellie Vaughan was to hold the fee of said farm in trust for the use of the complainants, and she practiced no fraud upon George D. Ryder to induce him to execute and deliver to her said deed, and· said agreement was not evidenced in writing, still there could be no recovery by the complainants in this case as said agreement would be within the Statute of Frauds, and the Statute of Frauds having been pleaded there could be no recovery, as such an agreement could not be legally established by parol testimony. *Lawson* v. *Lawson,* 117 Ill. 98; *Donlin* v. *Bradley,* 119 id. 412; *Myers* v. *Myers,* 167 id. 52.; *Dick* v. *Dick,* 172 id. 578; *Williams* v. *Williams,* 180 id. 361.

‚ In *Donlin* v. *Bradley, supra,* on page 420, the court said: "Where real estate is conveyed to a party for the benefit of someone other than the grantee, and the purposes and objects of the conveyance and the uses to which the property is to be applied are expressly declared by the grantor, such a transaction will constitute an express as contradistinguished from an implied trust, and if not mani-

fested or evidenced by writing it will be obnoxious to the
Statute of Frauds."

In *Williams* v. *Williams, supra,* on page 364, it was
said: "A party who conveys land by a deed absolute in
form cannot show by parol evidence that the conveyance
was, in fact, in trust for certain purposes or for his bene-
fit, when the Statute of Frauds is interposed. (*Lawson* v.
*Lawson,* 117 Ill. 98.). An express trust between the gran-
tor and grantee of land, where the grantee is to hold the
land in trust for the grantor or is to re-convey to him
on a certain contingency, is invalid under the Statute of
Frauds unless evidenced by some writing signed by the
grantee.—*Stevenson* v. *Crapnell,* 114 Ill. 19; *Biggins* v.
*Biggins,* 133 id. 211." And the fact that a trustee refuses
to execute an express trust or denies the existence of the
trust will not have the effect to take the trust out of the
operation of the Statute of Frauds.

In *Davis* v. *Stambaugh,* 163 Ill. 557, at page 564, it
was said: "The settled doctrine is, that equity does not, in
the face of the statute, enforce verbal promises. (2 Pome-
roy's Eq. Jur. sec. 1056.) The mere refusal of a trustee
to execute an express trust, or the denial of the existence
of the trust by the trustee, does not constitute such fraud
as takes the case out of the statute.—*Perry* v. *McHenry,*
13 Ill. 227; *Lantry* v. *Lantry,* 51 id. 458; *Scott* v. *Har-
ris,* 113 id. 447; *Stevenson* v. *Crapnell,* 114 id. 19; *Law-
son* v. *Lawson,* 117 id. 98; *Moore* v. *Horsley,* 156 id. 36;
*Champlin* v. *Champlin,* 136 id. 309; *Allmon* v. *Pigg,* 82
id. 149; *Rogers* v. *Simmons,* 55 id. 76."

In order to raise a trust *ex maleficio* there must be an
element of positive fraud in the transaction. In *Davis* v.
*Stambaugh, supra,* on page 564, it was said: "In order
to take the case out of the statute and establish a trust
*ex maleficio* the transaction by means of which the owner-
ship of property is obtained must be, in fact, a scheme of
actual deceit,—in other words, there must be an element of

positive fraud accompanying the promise and by means of which the acquisition of the legal title is wrongfully consummated, (2 Pomeroy's Eq. Jur. secs. 1055, 1056,) otherwise the Statute of Frauds would be virtually abrogated."

The evidence relied upon by the complainants consists of certain statements of George D. Ryder and Nellie Ryder made subsequent to the execution and delivery of said deed. Some of the statements testified to by the witnesses were made by George D. Ryder out of the presence of Nellie Ryder and after the deed was executed and delivered, and numerous statements testified to as having been made by Nellie Ryder were made subsequent to the death of George D. Ryder, and in some instances to attorneys whom the complainants had sent to her to effect a settlement of the matter now in controversy. The statements of George D. Ryder made out of the presence of Nellie Ryder after he had parted with his title to the farm were not admissible (*Phillips* v. *South Park Comrs.* 119 Ill. 626, on p. 640,) and could not properly be used for the purpose of impairing her title; and evidence of the character of that relied upon by the complainants in the form of statements made by Nellie Ryder is not generally considered by the courts to have very much probative force, and such testimony will not generally be sufficient upon which to divest a party of his title to real estate or to establish a trust *ex maleficio.*

In *Reeve* v. *Strawn,* 14 Ill. 94, on page 100, it is said: "Before we transfer the title to real estate upon the strength of parol testimony alone, the facts upon which such change is asked should be so convincing as to leave no reasonable doubt in the mind of the court, and not, as in this case, consist of ambiguous expressions and uncertain declarations made by the party sought to be charged and testified to by witnesses after the lapse of several years."

In *Corder* v. *Corder,* 124 Ill. 229, on page 233, it was said: "There is the evidence of some ten or twelve wit-

nesses in the record to the effect that William R. Corder stated that Joseph owned the land. These declarations are, in the main, denied by appellee. But aside from this, such evidence, where the title to real estate is involved, ought to be received with great caution. As held in *Bragg* v. *Geddes,* 93 Ill. 40, such evidence is subject to much imperfection and frequently is entitled to but little weight."

In *Daly* v. *Kohn,* 234 Ill. 259, where it was attempted to sustain a deed which it was claimed had been made to the grantee in pursuance of an oral contract made long anterior to the execution of the deed by the children of the grantee, this court, on page 265, said: "This court in a number of cases * * *· has pointed out the character of proof which is necessary to establish the right to a decree, * * * and it has uniformly been held that such agreement must be clear and certain in its terms and be established by testimony of an undoubted character which is clear, definite and unquestioned, and that declarations made by a promisor or donor to third persons do not constitute such clear, definite and unequivocal testimony.— *Worth* v. *Worth,* 84 Ill. 442; *Clark* v. *Clark,* 122 id. 388; *Geer* v. *Goudy,* 174 id. 514; *Seitman* v. *Seitman,* 204 id. 504; *Standard* v. *Standard,* 223 id. 255."

In view of the holding of these cases we will briefly refer to the evidence of some of the witnesses as indicating the character of the testimony upon which the appellees rely to sustain this decree.

Lemont Ryder testified subsequent to the death of George D. Ryder, and he says that while he and Nellie Ryder were standing at the coffin of the deceased he talked with Nellie Ryder, and she admitted that she was only to have a life estate in the farm and agreed she would execute some document that would assure the remainder to the complainants, but that she subsequently refused so to do. V. S. Lumley, an attorney at law, testified that George D. Ryder and the appellant called upon him in a business

way; that George D. Ryder said it was understood between them, from a time prior to the marriage, that his property should descend to his heirs, and that she should have the use of it during her life. Jennie M. Ryder testified the appellant told her that she had only a life use of the farm and that it would go to the children when she was through with it. B. I. Manley testified that he called upon the appellant at her home, as the attorney of the appellees, and she admitted to him that the arrangement between her and Mr. Ryder was that she was to have the use of the farm as long as she lived and that it was to go back to the children. Louise Newman testified that appellant said Mr. Ryder's property was to go back to the children when they were through with it. William McClain testified George D. Ryder stated, in the presence of his wife, that when they got married they drew up papers to the effect that if she outlived him she was to have the use of the property while she lived and if he outlived her he was to have the use of her property in the same way, and when they both died it was to go back to "our respective heirs." Sarah M. Ryder testified that the appellant said to her, "When we are through with the property it goes back to the children." Many of these conversations were said to have taken place years ago and they were substantially all denied by the appellant, and many witnesses called by appellant testified that George D. Ryder had stated to them that the farm belonged to his wife. This evidence we think manifestly falls far short of establishing a trust,— even an express trust,—if the Statute of Frauds had not been pleaded, and certainly it fails to establish a trust arising by construction *ex maleficio,* which the authorities all agree must be established by evidence which is clear, definite and unequivocal in its character. *Reeve* v. *Strawn, supra; Wallace* v. *Rappleye,* 103 Ill. 229; *VanBuskirk* v. *VanBuskirk,* 148 id. 9; *Wright* v. *Raftree,* 181 id. 464; *Williams* v. *Williams, supra.*

The parties had the right to make the contract they did if they each possessed full knowledge of all that materially affected the contract. The deed was supported by a valuable consideration, as marriage is a valuable consideration, there being no higher or stronger consideration, in law, upon which to found a gift or grant than marriage. (*Rockafellow* v. *Newcomb,* 57 Ill. 186.) After the deed was executed and delivered the parties moved upon the farm and they lived together for fourteen years as husband and wife, during which time, so far as this record shows, there is no proof that George D. Ryder was not entirely satisfied with the transaction, or that he ever claimed he had been overreached by his wife at the time he executed and delivered to her said deed, or that he regretted that he had conveyed to her his farm, and had he been so dissatisfied he had ample time during his married life to have invoked the aid of the courts, prior to his death, to have righted any wrong he might have thought he had suffered, had he so desired. On the contrary, he recognized the farm as that of his wife up to the time of his death, and while, perhaps, his delay would not absolutely be a bar to the complainants if they had any rights in the farm at the time of his death, when they seek relief they should be required, after so long a delay, to establish their rights by clear and positive testimony, which we think this record shows they have failed to do.

We do not think the cases principally relied upon by the appellees to sustain their contentions are in point. In *Larmon* v. *Knight, supra,* the wife held the title to valuable real estate. It was badly encumbered. She was upon her death bed, and at the solicitation of her husband she conveyed the property to him without consideration, with the understanding he would save the property for her children, and it was held he took the property as trustee for the children. In *White* v. *Ross, supra,* an invalid daughter, without business experience or independent advice, and

while under the domination of her mother, conveyed, without consideration, to her mother an estate worth $200,000, and it was held the conveyance was an improvident and unreasonable one for the child to make, and that an unconscionable advantage had been taken of the child by the parent, and the conveyance was set aside. In *Pope* v. *Dapray, supra,* the daughter's land was sold at a foreclosure sale, and she had at that time pending a suit for divorce against her husband, and her father advised her not to bid at the foreclosure sale and that he would bid in the land at the sale and convey it to her after her divorce suit was settled, and it was held the father, who bid under those circumstances, took title to the land in trust for the daughter. In *Stahl* v. *Stahl, supra,* the title to valuable real estate was in the name of the mother. While she was upon her death bed her children met at her home and they agreed it was desirable she should convey the property to some one of the children, and it was arranged the oldest son should take the title and hold it for all the children. An attorney was sent for, the deed was made and the mother executed it in bed, without consideration, to the son, and it was held he took the title in trust for himself and his brothers and sisters. And the case of *Hilt* v. *Simpson, supra,* is on principle like the case of *Stahl* v. *Stahl, supra.* In all of these cases the deeds were without consideration, and were made upon the express agreement that the grantee would hold the title to the property conveyed to him for the benefit of certain persons who were named. Under the circumstances in those cases the court, upon the proofs there introduced, held a trust *ex maleficio* had been established.

We think this case falls within the rule announced by this court in the case of *Moore* v. *Horsley,* 156 Ill. 36, rather than within the principle announced in the cases above referred to, where, on page 43, it was said: "We are aware of the rule laid down in *Allen* v. *Jackson,* 122

Ill. 567, and other like cases, to the effect that where a person obtains the legal title to property by virtue of a confidential relation and influence, under such circumstances that he ought not, according to the rules of equity and good conscience, as administered in chancery, to hold and enjoy the beneficial interests of the property, courts of equity, in order to administer complete justice between the parties, will raise a trust by construction and fasten it upon the conscience of the offending party, and will convert him into a trustee of the legal title, and order him to hold it or to execute the trust in such manner as to protect the rights of the real party in interest. But the doctrine of those cases has no application here. No fraudulent representations were used, nor were there any undue means resorted to by Taylor Moore or Hannah Moore to influence Jesse Moore to deed the land to them. The matter was talked over among the parties, and Jesse Moore of his own free will and accord, without any particular persuasion on the part of the grantees, made the deed,—at a time, too, when he was fully competent to transact any and all business. Indeed, so far as appears the conveyance was a mere voluntary act on the part of Jesse Moore, made with a full understanding of the nature of the transaction, and we perceive no ground upon which relief could be granted under the cross-bill, under the facts of this case, without disregarding entirely the Statute of Frauds. That cannot be done."

The decree of the circuit court will be reversed and the cause will be remanded to that court, with directions to enter a decree dismissing the original bill as amended and granting the relief prayed for in the cross-bill.

*Reversed and remanded, with directions.*