No. 26,940.

SOPHIA OGG, *Appellee*, v. MARY D. OGG et al., *Appellants.*

### SYLLABUS BY THE COURT.

TRUSTS—*Parol Agreement to Reconvey — Fraud as Essential Element — Conveyance by Husband to Defeat Wife's Interest.* In an action by a wife against her husband and his mother to set aside a conveyance, which he made to her before he contracted marriage, on the ground of fraud, the court found that there was no fraud in the transaction and the conveyance was valid and gave judgment against plaintiff, but later, on a motion for a new trial, ruled that there was a mutual understanding between the grantor and grantee that the land conveyed by the grantor to his mother would become his property when the mother died, and adjudged that he had an equitable interest in the land and the plaintiff had an inchoate interest of inheritance in his interest. A new trial was not granted nor were the prior findings in respect to the good faith of the transaction changed and the conveyance was not set aside. *Held,* the mutual understanding which rested in parol did not warrant the modification made by the court on the motion for a new trial.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed January 8, 1927. Reversed.

*S. D. Scott* and *S. T. Seaton,* both of Olathe, for the appellants.

Husband and Wife, 30 C. J. pp. 523 n. 79, 524 n. 96, 526 n. 24. Trusts, 39 Cyc. pp. 83 n. 62, 169 n. 11, 193 n. 8.

*C. B. Little, C. W. Gorsuch,* both of Olathe, and *David F. Carson,* of Kansas City, for the appellee; *James T. Cochran,* of Kansas City, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.:   Sophia Ogg brought this action against Mary D. Ogg and William F. Ogg, to set aside a conveyance of a tract of land upon the ground that it had been made fraudulently; that is, to defraud plaintiff of her marital rights, she being the wife of William F. Ogg.   The final decree of the court was unsatisfactory to both parties, and both have appealed.

Plaintiff alleged that she entered into a marriage contract with William F. Ogg in April, 1923; that on July 31, 1923, they were legally married; that prior to the marriage contract William F. Ogg represented to her that he owned a farm of 160 acres and some other property; that he was working for his father, Frank R. Ogg, at a salary of $100 per month; that she believed the representations so made and that William F. Ogg was in fact the owner of the land, and relying on his representations as to his property, she was induced to and did marry him.   She further alleged that on June 25, 1923, after the marriage contract was made and before it was consummated, William F. Ogg conveyed the land to his mother, Mary D. Ogg, and that it was conveyed without consideration and for the purpose of defrauding the plaintiff and cheating her out of her marital rights, both the grantor and grantee knowing of the marriage contract, and of the approaching marriage between plaintiff and William F. Ogg.   She also averred that the transfer was made without her consent or knowledge, and that had she known of the transfer she would not have entered into the marriage state:   She asked for judgment setting aside the conveyance.

In their answer, defendants admitted the marriage of William F. Ogg to plaintiff, the making of the conveyance, but alleged that it was made before the contract of marriage was entered into and for a valuable consideration.   There was a further averment that at the time of the marriage contract William F. Ogg was the owner of and possessed of sufficient property and income to support a wife and family, that Mary D. Ogg had no knowledge whatever of any marriage contract between the plaintiff and William F. Ogg at the time of the conveyance, and that the contract of sale was made and the money paid long before any such marriage contract was contemplated.

Testimony was introduced by plaintiff tending to show that William F. Ogg began calling on her in January, 1923, while she was engaged in teaching school; that prior to their engagement for marriage he told her that he owned the land in question; that on a visit to his parents after the engagement Frank R. Ogg, in the presence of his wife, asked her if William had shown her his farm, and she replied that he had. That prior to the marriage her husband represented himself to be the owner of the land, and she contracted marriage in reliance on his representations and of that of his parents that he was the owner of the land.

On the part of the defendants there was evidence tending to show that William F. Ogg told her before the marriage that he had sold the farm to his mother and was getting $50 per month from that source and $50 per month from the rent of a building. He denied that he made the representations to which his wife testified; and his mother testified that the contract for the purchase of the land from William was made on the last of February or first of March; that she arranged to buy the farm and to pay him $50 per month, he having said that the returns from the farm were not satisfactory, and he preferred to have a regular income of $50 per month. That while the contract was made about the first of March, the deed was not executed until in June, as she had intrusted the execution of the deed to her husband and he had put it off from time to time. William said that the day he sold his farm to his mother, he told his father about it, and had said to his mother that he hadn't received a dollar return from the farm since he owned it, and that the taxes were about $200 per year. In the course of the trial the court found that a legal contract had been entered into between the defendants, William F. Ogg and his mother, by which he agreed to convey the land to his mother; that the contract was entered into and money paid thereon before there was any engagement of marriage between the plaintiff and the defendant, William. It was further held that the deed executed by the defendant after the engagement to marry was made, was a good and valid instrument and conveyed the title in the land to Mary D. Ogg. There was a specific finding that there was no fraud practiced on the plaintiff by William F. Ogg and Mary D. Ogg in the contract to sell and convey the land. Judgment for defendants was given.

On a motion for a new trial the court modified that decree in the following particulars:

Ogg v. Ogg.

"The court finds that at the time of the oral contract between Mary D. Ogg and William F. Ogg, about March 1, 1923, there was a mutual understanding that at the death of Mary D. Ogg, the land in question would become the property of said William F. Ogg, and that he therefore has an equitable interest in said land. That Sophia Ogg has an inchoate statutory right of inheritance in William F. Ogg's equitable interest in said land as the wife of William F. Ogg. It is therefore considered and adjudged that the plaintiff Sophia Ogg has an inchoate statutory right of inheritance in said land as the wife of William F. Ogg."

The defendants complain that the modification made was not justified either by the pleadings or the findings of the court, while the plaintiff contends that the evidence does not justify the findings of the court with respect to fraud, and she urges that concealment and fraud were established. The action was in express terms one brought to set aside a conveyance because it was fraudulent and void. The petition was framed upon that theory and the prayer was that the conveyance be set aside as fraudulent and void. Considerable testimony was given for and against the proposition that there were false representations made by William F. Ogg, and fraud in the transaction mentioned, especially as to the coneyance of the farm to his mother, Mary D. Ogg. As already stated the court expressly found that the contract to sell the land was made before the marriage contract was entered into and that there was no fraud in the transaction, and further that the contract of sale and the conveyance were valid. In a written opinion stating the grounds of its judgment which is included in the record, the court said:

"The turning point in this case, as I see it, is the evidence of the contract of sale made on March 1, 1923, and counsel for the plaintiff, in the oral argument, conceded that there was substantial evidence to support the contract and the payment of part consideration. The date, March 1, was long before there was any engagement to marry, according to the evidence, and as I see it the adequacy or inadequacy of the consideration has very little to do with the matter to be determined here. . . . The consideration, of course, would be inadequate, yet here was W. F. Ogg wanted probably ready money. I can conceive how he believed that the regular amount of money received during the lifetime of his mother would be somewhat to his liking, and relieved him of responsibility. Then there was the further thing that undoubtedly was in the minds of both these parties, and that is that in a very few years probably he would inherit not only this property, but undoubtedly a much larger amount of property from his mother. The deed, of course, appears from this evidence to have not been executed until after there was an engagement to marry, but that under all the decisions that I have examined that seems to make no difference, if the contract to convey was made before there was any engagement to marry.

"There is the further proposition in this evidence, and that is the withholding of the deed from the record, which was explained by Mary D. Ogg, but even if it was intentionally withheld from the record it is not a fraud upon any legal rights of the plaintiff. It appears that Mary D. Ogg had possession of this property and was making improvements on it, and the installments made [paid] I am satisfied were more than the net income from the property except, perhaps, in a few exceptional cases. . . .

"There is one further observation. It appears to me from all this evidence that this evidence shows that instead of trying to defraud the plaintiff, that Mary D. Ogg and F. R. Ogg showed a willingness to be generous to the plaintiff, and a disposition to provide what appears to me to be adequate support for the plaintiff; to provide adequately for her present and future.

"Without going into matters any further or attempting to cover the entire matter I think this contract was made before there was any engagement to marry; that there was no fraud practiced on the plaintiff, and the judgment shall be for the defendants in the action."

In the modification of the judgment made on the motion for a new trial it will be observed that the court does not modify its findings as to the absence of fraud in the sale and conveyance of the land or of the other fact that the contract of sale was made before the contract of marriage, and it did not grant a new trial nor undertake to set aside the conveyance. If the conveyance is free from fraud and was contracted prior to the engagement of marriage, there would be no valid ground for setting it aside. Conveyances of land as treated by the court cannot be lightly set aside nor overturned because of some indefinite understanding resting in parol. The extent to which the court went on the motion for a new trial and in the modification was to find that there was an understanding that at the death of his mother the land would go back to her son. That understanding did not destroy the validity of the written instrument nor give rise to a trust affecting real estate. The mother did say in her testimony that she intended the farm should go back to William at her death. In explanation she said that it was their purpose to divide their property equally between William and Josephine at her death, and that the farm would go to William. It was a natural inference that the son would inherit the property, as it is stated that the mother and father are people of large means, and have but the two children, and it is not unreasonable that they intended the land should ultimately go back to William. In any event the understanding mentioned did not under the findings of the court operate to overthrow the deed which was in form an absolute and unconditional

conveyance. It is conceded that an express trust cannot be engrafted on such a conveyance by an oral understanding. The implied or constructive trust spoken of by plaintiff is eliminated by the finding that there was no fraud in the transaction. To raise a trust *ex maleficio*, the element of positive fraud in the transaction must exist. (*Ryder v. Ryder*, 244 Ill. 297.) Besides, as has been shown, the plaintiff did not ask to have a trust declared, and only asked to set aside the deed. The vague understanding resting in parol did not warrant the court in modifying the findings and judgment previously rendered. It is argued by plaintiff that the findings of the court as to the absence of fraud were not sustained by the evidence, but a reading of the record satisfies us that the findings made are well supported by the testimony. Much is said as to the rights of a wife in her husband's estate and as to the protection which the law affords where the husband is making a fraudulent disposition of property in which she has an interest. The plaintiff is still the wife of William and, of course, has an inchoate right in her husband's real estate, which has the element of property to such a degree that an action can be maintained during the life of her husband for the protection of her inchoate interest in any property of his, and she may maintain an action to prevent a fraudulent disposition of the property. (*Busenbark v. Busenbark*, 33 Kan. 572, 7 Pac. 245.) One of the findings, however, is that there was no fraud in the transaction, and the court, as we have seen, stated that "Mary D. Ogg and F. R. Ogg (William's father) showed a willingness to be generous to the plaintiff and a disposition to provide what appears to me to be adequate support for the plaintiff to provide for her present and future."

It follows that the modification must be reversed and set aside and the cause remanded with directions to enter judgment for the defendants.